■ CAROLINE LANGELIER, as Parent and Natural Guardian of CURT LUCK, an Infant, Appellant, v DOROTHY F. M. FORD, as Executrix of JOHN R. FORD, Deceased, et al., Respondents. (Action No. 1.) CAROLINE LANGELIER, as Parent and Natural Guardian of CURT LUCK, an Infant, Appellant, v ALBANY MEDICAL COLLEGE OF UNION UNIVERSITY, Respondent. (Action No. 2.)—Casey, J. P. Appeals (1) from an order of the Supreme Court (Doran, J.), entered April 20, 1989 in Schenectady County, which granted defendant Albany Medical College's motion for an order compelling Curt Luck to submit to a physical examination, and (2) from an order of said court (Lomanto, J.), entered May 15, 1989 in Schenectady County, which detailed various procedures and guidelines for the physical examination.

Curt Luck, an infant who was born prematurely in January 1971, has severe developmental disabilities and mental retardation due to hydrocephalus. Alleging malpractice in the failure to properly and timely diagnose and treat the infant, plaintiff commenced an action against two pediatricians in July 1984. In November 1985, plaintiff commenced an action against defendant Albany Medical Center Hospital, which was consolidated with the action against the individual doctors (action No. 1). Plaintiff commenced a separate action against defendant Albany Medical College in October 1986 (action No. 2). By early February 1988, considerable discovery had been completed, but the medical malpractice panel had not been convened and plaintiff had not filed a statement of readiness or note of issue. Nevertheless, by letter dated February 18, 1988, Justice Walsh notified counsel that trial was scheduled for April 27, 1988. On February 23, 1988, Justice Walsh adjourned the trial without a new date, concluding that none of the parties could proceed to trial on the scheduled date. On the following day, plaintiff filed a note of issue and statement of readiness, apparently at the request of Justice Walsh.

During the spring of 1988, counsel for the Medical College discussed with plaintiff's counsel the need for a physical examination of the infant. By letter dated June 28, 1988 plaintiff's counsel formally advised defense counsel that he would not consent to a physical examination. The Medical College then moved for an order compelling the infant to submit to a physical examination, including "necessary testing". Plaintiff objected, contending that the Medical College had waived its right to a physical examination by its undue delay in failing to make an earlier request and that the physical examination posed unacceptable risks to the infant,

particularly if certain diagnostic testing procedures were to be included in the examination. Supreme Court (Doran, J.) granted defendant's motion to the extent of directing that there be a physical examination of the infant, and an evidentiary hearing was ordered on the issues concerning the need for and risks posed by the diagnostic tests. A hearing was held, with expert testimony taken on the factual issues raised by the motion, and Supreme Court (Lomanto, J.) thereafter ordered that the physical examination of the infant include a MRI (magnetic resonance imaging) or a CAT (computerized axial tomographic) scan, subject to certain conditions. Plaintiff appeals. We affirm.

As to plaintiff's claim of undue delay or waiver, we see no abuse of discretion in Supreme Court's decision to permit further discovery. The Medical College was the last party to be sued, more than two years after the first action was commenced. Discovery was still underway as late as February 1988 when plaintiff was deposed, and the matter was not ready for trial since the medical malpractice panel procedures had not been completed (see, Judiciary Law § 148-a; 22 NYCRR 202.56). Counsel for the Medical College also alleged that it took some time to locate a qualified pediatric neurologist to examine the infant because those who are qualified locally are employed by the Medical College.

Turning to the question of whether the physical examination should be prohibited due to the possibility of danger to the infant, the relevant standard was articulated in *Lefkowitz v Nassau County Med. Center* (94 AD2d 18). Once the opponent of the examination shows "that the proposed test is prima facie potentially dangerous" the burden shifts to the proponent to present "proof 'showing the necessity for such examination, the details of the procedure employed in making it, the frequency with which it has been done, together with the experience and observations which have been made by physicians as to pain, harm, or after *[sic]* results of any nature, occurring to persons so examined' " (*supra,* at 21, quoting *Cardinal v University of Rochester,* 271 App Div 1048).

It is conceded that in the case at bar MRI and CAT scans are relatively benign, but that the sedation required for someone with the infant's disabilities to undergo either scan poses a theoretical risk. Accordingly, plaintiff clearly met her burden as the opponent. Based upon our review of the record, however, we agree with Supreme Court that the expert testimony at the hearing satisfied the burden imposed upon the Medical College as the proponent of the test procedure. In

addition to the unequivocal testimony of the two experts who advocated the MRI and CAT scan procedures, plaintiff's expert testified that in his experience about 1% of the patients encountered complications that could be considered life threatening if untreated. He conceded, however, that the complications were reversible with proper treatment and that he had never had a patient suffer permanent injury from the procedure. He also conceded that certain safety measures proposed by the other experts "would significantly reduce the risk". In authorizing the MRI or CAT scan for the infant, Supreme Court directed that the proposed safety measures be employed. There is no basis in this record for disturbing Supreme Court's orders.

Orders affirmed, with costs to defendant Albany Medical College. Casey, J. P., Weiss, Mikoll, Yesawich, Jr., and Levine, JJ., concur.