CLIFFORD STASIAK, a Minor, by his Father and Next Friend, Michael Stasiak, Plaintiff-Appellant, v. ILLINOIS VALLEY COMMUNITY HOSPITAL *et al.*, Defendants (William J. Farley, Defendant-Appellee; Michael Stasiak *et al.*, Contemnors-Appellants).

Third District   No. 3—91—0211

Opinion filed April 7, 1992.

Thomas M. Harris, of Jerome Mirza & Associates, Ltd., of Bloomington (Jerome Mirza, of counsel), for appellants.

Rooks, Pitts & Poust, of Joliet (Robert R. Gorbold, of counsel), for appellee.

JUSTICE GORMAN delivered the opinion of the court:

Plaintiff was ordered by the trial court to submit to a magnetic resonance imaging (MRI) test pursuant to defendant's Supreme Court Rule 215 (134 Ill. 2d R. 215) motion. Conflicting medical affidavits were submitted in support of and in opposition to the motion. The safety of the plaintiff undergoing an MRI necessarily under sedation in this case is disputed by the medical experts.

Plaintiff's attorney and plaintiff's father (and next friend) refused to submit the plaintiff to the MRI. Based on their failure to comply with the trial court's order, they were found in contempt of court and fined $100 each. This appeal follows. We reverse and remand.

Plaintiff is now eight years of age. He was born at Illinois Valley Community Hospital. Delivered by William H. Farley, M.D., plaintiff

was born 33½ weeks into his mother's pregnancy. Plaintiff alleges in his suit that defendants' negligence caused him to suffer brain damage at birth resulting in his cerebral palsy.

As part of discovery, defendant Farley moved to require the minor plaintiff to undergo a urine test, a dilated funduscopy, a neurological exam, an exam by a genetics specialist, and a magnetic resonance imaging (MRI) test. The motion alleged that the tests were necessary to "further investigate the nature and cause of the minor plaintiff's cerebral palsy" and that "no other comparable tests had been run for the specific findings sought" by these tests. Plaintiff objected only to the request for the MRI because sedation and/or anesthesia would be required, given the minor plaintiff's spasticity, with such sedation being an invasion of Clifford's body.

In support of this position, plaintiff filed the affidavits of two medical doctors. Dr. David Abramson, a physician and surgeon board certified in pediatric medicine, newborn and perinatal medicine, and emergency medicine, stated:

> "In a child of the age and physical disability of [plaintiff], with his spasticity especially, [plaintiff] would require sedation with drugs to undergo an MRI which would pose, essentially, the risks of anesthesia. These risks include all of the possible adverse results of anesthesia including cardiac arrest."

Dr. Robert Eilers, a board-certified physician in physical medicine and rehabilitation, stated that he had personally examined the plaintiff and was familiar with plaintiff's condition of spastic diplegia. He was also familiar with MRI testing. To properly sedate the plaintiff for the examination, Dr. Eilers stated:

> "[C]onsidering his disability, spasticity, and age, you would have to completely paralyze him for this test, which would have to guarantee he would be sound asleep, with no spasms for an hour. Chloral hydrate probably would be used for this purpose and you may have to add a lot of valium to block out spasms. He could develop many adverse reactions as a result of anesthesia. He could have respiratory arrest which could lead to cardiac arrest. He could also have an allergic reaction with increased seizures."

In response to plaintiff's medical affidavits, defendant filed the affidavit of Dr. Steven Coker, a board-certified physician in pediatric neurology. Dr. Coker was the physician who had been retained by defendant to conduct the MRI. He stated that it was both necessary and crucial to perform the MRI of the brain to fully investigate and determine the cause of the plaintiff's cerebral palsy. He stated that

the test was similar to a computed axial tomography (CAT) scan procedure and would require the plaintiff to remain still for approximately one hour. As to sedation, he stated that the minor plaintiff would be given chloral hydrate and atarax, two mild sedatives which would have the effect of relaxing the plaintiff and mildly sedating him. According to Dr. Coker, "These drugs are *not* anesthetic agents" and "pose no medical risk to the minor [p]laintiff. They are used to assist the minor [p]laintiff in lying still during the test." (Emphasis in original.)

Plaintiff then filed a supplemental affidavit of Dr. Eilers which disagreed with Dr. Coker's statement that the use of the drugs chloral hydrate and atarax posed "no medical risk to the minor plaintiff." Dr. Eilers further stated that a central nervous system depressant such as Valium would probably also be used to prevent spasms. He quoted from the Physician's Desk Reference (PDR) that "the potentiating action of the hydroxyzine [Valium] must be considered when the drug is used in conjunction with central nervous system depressants such as narcotics, non-narcotic analgesics, and barbiturates." The adverse reactions to Valium reported in the PDR include bradycardia and cardiovascular collapse.

Dr. Abramson's original affidavit was also supplemented. He did not believe that an MRI could be performed safely on this particular plaintiff with the use of chloral hydrate or atarax. Further, he said that although these medications are not classified as general anesthetics, they were soporifics and that their use was "tantamount to the use of general anesthesia."

Defendant then submitted the affidavit of Dr. Mercedes Alcantara, a board-certified anesthesiologist. She defined general anesthesia in detailed fashion. She stated that it entailed the effects of analgesia, amnesia, and sedation all together. Dr. Alcantara stated that chloral hydrate was a sedative/hypnotic, atarax was a sedative, and that the administration of chloral hydrate and atarax in the doses suggested by Dr. Coker posed essentially no risk to the plaintiff when administered with proper medical supervision. According to Dr. Alcantara:

> "These drugs are similar in effect to sleeping pills and are commonly used to assist in MRI and CAT scan procedures with pediatric patients. They will not cause a state of general anesthesia and do not pose a risk comparable to the administration of general anesthesia."

Given this conflicting medical evidence, the circuit court ordered plaintiff to submit to the magnetic resonance imaging within 21 days. Plaintiff failed to comply, and the circuit court found Michael Stasiak

in contempt of its order and found plaintiff's attorney in contempt for violation of Supreme Court Rules 201 and 219. The court stayed trial of the cause as a sanction pursuant to Supreme Court Rule 219 until such time as plaintiff submits to the test.

The plaintiff and his attorney argue the circuit court abused its discretion in ordering the minor plaintiff to submit to MRI testing. They contend (1) that the record is devoid of evidence to establish the relevance or necessity of the MRI in this action and (2) that defendant failed to establish the safety of the test as it relates to this particular plaintiff under sedation.

In pertinent part, Supreme Court Rule 215 states as follows:

> "In any action in which the physical or mental condition of a party or of a person in his custody or legal control is in controversy, the court, upon notice and for good cause shown on motion made within a reasonable time before the trial, may order the party to submit to a physical or mental examination by a physician suggested by the party requesting the examination, or to produce for such examination the person in custody or under legal control who is to be examined." (134 Ill. 2d R. 215(a).)

When all requirements of the rule have been met, the trial court, in its discretion, can order a physical or mental examination under appropriate conditions. The trial court's order will only be reversed upon a showing of an abuse of discretion. (*In re Conservatorship of the Estate of Stevenson* (1970), 44 Ill. 2d 525, 256 N.E.2d 766.) Rule 215 is designed as an aid to discovery when the plaintiff's medical condition or the cause of his medical condition is in issue. The defendant's Rule 215 request is usually made after plaintiff has provided his medical records under Supreme Court Rule 214 (134 Ill. 2d R. 214). Based on the affidavits of compliance filed by plaintiff in this case, it would appear that plaintiff has furnished defendant with all of his medical records.

Plaintiff concedes that the rule sanctions the MRI test. The controversy presented is the competing interest of the defendant to investigate and completely satisfy his curiosity by the use of generally accepted medical tests and the plaintiff's interest in his own safety and comfort given the risks of a particular procedure.

Rule 215 was recently examined in *Sarka v. Rush-Presbyterian-St. Luke's Medical Center* (1990), 207 Ill. App. 3d 587, 566 N.E.2d 301. In that medical malpractice action, minor plaintiff Saul Sarka was ordered to submit to an MRI or CT scan under sedation with chloral hydrate. Sedation was required to obtain a clear, motion-free scan. Defendant's expert, with a motion-free CT scan, testified that

he would be able to make a diagnosis as to whether or not Saul's condition was congenital. Plaintiff's mother and attorneys were held in contempt when they refused to comply with the court's order. Although defendant's expert had stated that the risks associated with chloral hydrate were negligible in the dosage recommended, plaintiff's expert countered that disorientation, incoherence, ataxia, dizziness, nausea, vomiting, diarrhea, and skin rashes were risks associated with chloral hydrate. Death, cardiac arrest, and respiratory failure were associated with toxic doses of chloral hydrate and with chronic use of the drug. Plaintiff's expert stated that it was impossible to determine in advance whether a particular individual will experience an adverse reaction to chloral hydrate. The reviewing court affirmed the trial court's order compelling plaintiff to submit to the examination under sedation. The burden-shifting approach enunciated in *Lefkowitz v. Nassau County Medical Center* (1983), 94 A.D.2d 18, 462 N.Y.S.2d 903, was adopted by the Illinois Appellate Court.

In *Lefkowitz*, the New York appellate court reversed an order requiring plaintiff to submit to a hysterosalpingogram, which is a fertility test involving X-ray examinations of the uterus and fallopian tubes after injection of a radiated opaque medium. Plaintiff alleged that she had become infertile as a result of defendant's negligence. The court stated that, although plaintiff placed her physical condition in controversy when she commenced the lawsuit, an examination should not be required if it presented the possibility of danger to plaintiff's life or health. Plaintiff had presented uncontradicted medical evidence which established that there was a significant risk and that the test would not necessarily be conclusive on the issue of infertility. The court held that the plaintiff had the initial burden of showing that the proposed test is *prima facie* dangerous. If that initial burden is met, the burden then shifts to the defendant to demonstrate the safety of the proposed examination.

The New York appellate-level courts have followed *Lefkowitz* as they have had occasion to address this issue in later cases. In *Langelier v. Ford* (1990), 159 A.D.2d 851, 552 N.Y.S.2d 992, the minor plaintiff, who was born prematurely, had severe developmental disabilities and mental retardation due to hydrocephalus. He sued his pediatrician for alleged negligence in diagnosing and treating him. The defendant moved to compel the minor plaintiff to submit to either an MRI or a CT scan under sedation. After a hearing, the trial court ordered the examination over plaintiff's objection. On review the appellate court cited to *Lefkowitz* as the controlling law. Plaintiff made a *prima facie* showing that the sedative was dangerous. In spite of that

the court approved the test because plaintiff's expert also established that the risk of life-threatening complications was only 1% and that those complications were reversible with proper treatment. The order also directed that proposed safety measures which "would significantly reduce the risk" to plaintiff be employed.

Most recently in *Thomas v. John T. Mather Memorial Hospital* (1990), 162 A.D.2d 521, 556 N.Y.S.2d 720, the New York appellate court also followed the *Lefkowitz* approach and affirmed an order requiring an MRI or CAT scan under sedation. Defendant had sought to compel the 23-year-old brain-damaged plaintiff who had filed a medical malpractice action to undergo the examination. The court stated that the defendants showed in their affidavits that the CAT scan was a relatively safe, noninvasive, and conventionally accepted method of determining the nature and extent of the plaintiff's neurological damage. The court also stated that defendants had further established that the sedative chloral hydrate was a mild, nonnarcotic sleeping aid, which was frequently used for young, elderly, and ill patients with few "unfavorable" side effects. Plaintiff's expert had merely stated that chloral hydrate clearly did represent a risk to plaintiff's health and offered no details as to how chloral hydrate would be harmful to the plaintiff.

On the record before this court, plaintiff objected to the MRI examination and established by competent medical testimony that it was *prima facie* dangerous to this particular plaintiff. Defendant did not establish the necessity for the examination. Defendant stated in conclusory terms that it was necessary to perform an MRI of the plaintiff's brain in order to fully investigate the cause of the minor plaintiff's cerebral palsy. Defendant also stated that the MRI was "crucial in attempting to determine the cause of the minor plaintiff's cerebral palsy" but did not state why the MRI was crucial or necessary. This fact distinguishes the instant case from *Sarka,* where the court affirmed the order granting the test. There the court stated that the MRI, under sedation, would give clear test results and definitively resolve a major legal issue as to whether the minor plaintiff's medical condition was congenital. Here, there is no showing that the medical records of the plaintiff which are in the possession of the defendant are incomplete or that the MRI will provide additional necessary evidence. It is also clear that there is no evidence before this court to the effect that the MRI results will resolve any major legal issue.

Under the balancing test, the trial court is required to weigh the probative value of the proposed examination as it relates to the litigation against the level of risk to the plaintiff. Once the plaintiff objects

to a Rule 215 motion based on risk of harm or death supported by proper medical testimony or evidence, the burden shifts to the defendant. Defendant must then establish by competent medical testimony or evidence that the requested examination has a clear probative value to the litigation's ultimate issues and that there is a minimal level of risk to the plaintiff.

The legal necessity and/or benefit to be derived from the procedure must substantially outweigh the risk to the plaintiff. The standards to be employed must be flexible, and each case must be judged on its own individual, unique circumstances. In this case the trial court erred in ordering the MRI because of defendant's failure to establish by competent medical evidence the necessity for the examination.

In determining whether the defendant has met his burden of demonstrating safety, and a minimal level of risk to the plaintiff, the court must also consider certain policy concerns before subjecting a plaintiff to a risk he finds objectionable. Although one does place his physical condition in controversy when he commences a medical malpractice action, a person should not be required to place his health or life in danger as a condition to maintaining suit. While a person may choose to expose himself to a certain level of risk under the care of his own treating physician, this does not mean that the litigant must expose himself to the same level of risk for legal discovery purposes under an examining physician's direction.

In summary, we conclude that the trial court did abuse its discretion when it granted defendant's motion to compel this minor plaintiff to submit to an MRI under sedation. That order is hereby vacated. In so ruling, we vacate the contempt orders and the fines assessed against contemnors.

Reversed and remanded.

McCUSKEY and SLATER, JJ., concur.