433 S.E.2d 554 (1993)
189 W.Va. 616
STATE of West Virginia ex rel. John David LETTS, an Infant Under the Age of 18 Years Who Sues by His Parents and Next Friends, John B. LETTS and Elizabeth J. Letts; John B. Letts, individually; and Elizabeth J. Letts, individually, Plaintiffs Below, Petitioners,
v.
The Honorable Paul ZAKAIB, Judge of the Circuit Court of Kanawha County, West Virginia, Charleston Area Medical Center, Inc., a West Virginia Corporation, and Ellen Szego, M.D., Defendants Below, Respondents.
No. 21599.
Supreme Court of Appeals of West Virginia.
Submitted April 6, 1993.
Decided July 16, 1993.
*555 Allan H. Masinter, Gerald R. Lacy, Charleston, for petitioners.
Suzanne Oxley, Cheryl A. Eifert, Jenkins, Fenstermaker, Krieger & Farrell, for respondents.
WORKMAN, Chief Justice:
Petitioners, the parents of infant John David Letts ("John David"), seek to prohibit enforcement of an order entered by the Circuit Court of Kanawha County which directs that John David submit to a magnetic resonance imaging ("MRI") diagnostic procedure. Because the record before this Court indicates that the circuit court did not require Respondents Charleston Area Medical Center, Inc. ("CAMC") and Dr. Szego to demonstrate good cause with regard to the need for administering the MRI, we grant the writ of prohibition and remand this case to the lower court for further proceedings.
John David was born prematurely at CAMC Women's and Children's Division, on August 23, 1988. He was subsequently diagnosed as having an eye disease known as retinopathy of prematurity which affects the retinas of some premature babies. On October 28, 1988, John David was transported to West Virginia University Hospitals for cryotherapy treatment of his retinas. The cryotherapy was unsuccessful and John David suffered detached retinas of both eyes. Despite additional eye surgery in December 1988, John David remains blind.
Petitioners filed a civil action in the Circuit Court of Kanawha County on August 1, 1990, alleging that John David became *556 totally and permanently blind as a result of Respondents' unreasonable delay in diagnosing and treating John David's eye disease. Petitioners believe that John David's blindness was caused by the detachment of his retinas. Respondents maintain that they are entitled to investigate whether one source of John David's blindness is cortical damage secondary to an intracranial bleed suffered by the infant as a neonate. When Respondents were unable to obtain dates from Petitioners in connection with their request for an independent medical examination, they filed a motion to compel seeking to obtain an order requiring the MRI examination.
At a hearing on February 17, 1993, the circuit court considered the arguments of Petitioners and Respondents concerning the MRI.[1] Petitioners argued that the MRI examination should be denied since it involved the risk of death to John David. As support for their position, Petitioners informed the court of an incident which occurred in Charleston, West Virginia, in January 1993, where a child died after being sedated in preparation for an MRI. The circuit court responded to Petitioners' argument by stating: "Absence [sic] of showing of any risk to this child, substantial risk to this child, by that I mean something other than a marginal risk, I'm going to authorize the examination and evaluation by the doctor there in Morgantown."[2] At the conclusion of the hearing, the circuit court granted the motion to compel and ordered that John David submit to an MRI diagnostic procedure in Morgantown at the requested time. Petitioners seek to prohibit the enforcement of this ruling.
Respondents sought an independent medical examination of John David pursuant to Rule 35(a) of the West Virginia Rules of Civil Procedure. Rule 35(a) provides:
(a) Order for examination.When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or other qualified expert or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.
W.Va.R.Civ.P. 35(a) (emphasis supplied). Petitioners argue that the circuit court failed to require the showing of good cause mandated by Rule 35(a) before ordering that John David be subjected to the MRI procedure.
The burden of establishing good cause pursuant to Rule 35 of the West Virginia Rules of Civil Procedure is firmly imposed on the party requesting the examination. In its seminal decision on Rule 35, the United States Supreme Court in Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), first explained that the "good cause" requirement of Rule 35 "is not a mere formality" and further, that the requirement is
not met by mere conclusory allegations of the pleadingsnor by mere relevance to the casebut require[s] an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy *557 and that good cause exists for ordering each particular examination.
Id. at 118, 85 S.Ct. at 242-43. Addressing the type of evidence necessary at a Rule 35 hearing, the United States Supreme Court explained that:
This does not ... mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other usual methods short of a hearing. It does mean, though, that the movant must produce sufficient information... so that the ... judge can fulfill his function mandated by the Rule.
Schlagenhauf, 379 U.S. at 119, 85 S.Ct. at 243.
This Court's review of whether good cause was established below is severely circumscribed by the fact that only a minuscule portion of the hearing transcript was produced as part of the record. However, from the record available to this Court it appears that Respondents relied solely on conclusory allegations that an MRI was necessary to determine the source and extent of neurologic damage and to investigate "whether or not one source of plaintiff's visual problems is cortical damage secondary to his severe intraventricular hemorrhage." Respondents provided neither affidavits nor any other type of evidentiary support to prove these allegations at the circuit court hearing. In fact, when questioned during oral argument regarding their obligation to demonstrate good cause, Respondents stated only that Petitioners had not previously raised any objection to the independent medical examination. This response was inadequate and fails to establish good cause as required by the rule.
The good cause showing necessary to fulfill the requirements of Rule 35(a) is essentially a demonstration of both relevance and need with respect to the requested medical procedure. See Dale P. Olson, Modern Civil Practice in West Virginia, § 6.21 at 293-94 (1984); see also Stasiak ex rel. Stasiak v. Illinois Valley Community Hosp., 226 Ill.App.3d 1075, 169 Ill.Dec. 55, 57, 590 N.E.2d 974, 976 (1992) (plaintiff opposed granting of independent medical examination on ground that defendant failed to establish relevance or necessity of MRI). Even when good cause exists, the issue of ordering an independent medical examination remains within the court's discretion. See Stinchcomb v. United States, 132 F.R.D. 29, 30 (E.D.Pa.1990); accord Hardy v. Riser, 309 F.Supp. 1234, 1241 (N.D.Miss.1970). In ruling on a Rule 35 motion, one factor which may affect a court's decision is the "medical acceptance and safety of the particular procedure" in question. See 8 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2235 at 682 (1970).
Even when a particular medical procedure is both medically accepted and generally safe, a related issue that arises is the risk of harm to a particular plaintiff based upon his or her medical history. That is precisely the issue in this case. While MRI's are viewed as statistically safe, John David has a history of allergic reaction to the sedatives normally administered prior to an MRI.[3] The heightened risk presented by John David's medical history complicates the Rule 35 decision. As the court commented in Stasiak,
Although one does place his physical condition in controversy when he commences a medical malpractice action, a person should not be required to place his health or life in danger as a condition to maintaining suit. While a person may choose to expose himself to a certain level of risk under the care of his own treating physician, this does not mean that the litigant must expose himself to the same level of risk for legal discovery purposes under an examining physician's direction.
169 Ill.Dec. at 60, 590 N.E.2d at 979.
Several courts have examined the "difficult question of whether a court is within *558 its discretion to order a physical examination which may injure the plaintiff...." Sarka ex rel. Sarka v. Rush Presbyterian-St. Luke's Medical Center, 207 Ill. App.3d 587, 595, 152 Ill.Dec. 614, 619, 566 N.E.2d 301, 306 (1990). In Sarka, the plaintiffs sought to prohibit both a computed axial tomography ("CAT") and an MRI scan of a minor child on the grounds that the proposed sedative, chloral hydrate, involved the risk of death. At issue was the determination of whether the child suffered from a genetic defect which resulted in brain malformation. In considering the defendant's motion for an independent medical examination pursuant to Rule 215,[4] the trial court took evidence on the issue of whether the plaintiff child could safely undergo a CAT scan under sedation. Id. at 592-94, 152 Ill.Dec. at 617-18, 566 N.E.2d at 304-05. The trial court ordered that the CAT scan was required and noted that the evidence submitted by the plaintiffs did not address the critical issue of "`the risk of harm to this child.'" Id. at 594, 152 Ill. Dec. at 618, 566 N.E.2d at 305. In reviewing whether the court's exercise of its discretion was proper, the appellate court adopted the standard announced in Lefkowitz v. Nassau County Medical Center, 94 A.D.2d 18, 462 N.Y.S.2d 903 (1983), which requires an opponent of an independent medical examination request to initially "meet the burden of showing that the examination in question is prima facie dangerous. If the plaintiff meets her burden, the burden then shifts to the defendant to demonstrate the safety of the proposed examination." 207 Ill.App.3d at 595-96, 152 Ill.Dec. at 619-20, 566 N.E.2d at 306-07. The appellate court upheld the lower court's order permitting the CAT scan, finding that the defendants met their burden of showing the safety of the proposed examination whereas the plaintiff failed to introduce any evidence regarding the specific risk of harm to the child. Id. at 596, 152 Ill.Dec. at 621, 566 N.E.2d at 308.
One court has described the concerns which underlie a Rule 35 decision as the "competing interest of the defendant to investigate and completely satisfy his curiosity by the use of generally accepted medical tests and the plaintiff's interest in his own safety and comfort given the risks of a particular procedure." Stasiak, 169 Ill. Dec. at 58, 590 N.E.2d at 977. In Stasiak, an eight-year old plaintiff with cerebral palsy was ordered to submit to an MRI notwithstanding conflicting medical affidavits regarding the safety of sedating him in preparation for the examination. 169 Ill. Dec. at 56-57, 590 N.E.2d at 975-76. The Stasiak court opined:
Here, there is no showing that the medical records of the plaintiff which are in the possession of the defendant are incomplete or that the MRI will provide additional necessary evidence. It is also clear that there is no evidence before this court to the effect that the MRI results will resolve any major legal issue.
Under the balancing test, the trial court is required to weigh the probative value of the proposed examination as it relates to the litigation against the level of risk to the plaintiff. Once the plaintiff objects to a Rule 215 [Rule 35] motion based on risk of harm or death supported by proper medical testimony or evidence, the burden shifts to the defendant. Defendant must then establish by competent medical testimony or evidence that the requested examination has a clear probative value to the litigation's ultimate issues and that there is a minimal level of risk to the plaintiff.
169 Ill.Dec. at 59, 590 N.E.2d at 978. Before finding that the lower court had abused its discretion in ordering the MRI, the court explained:

*559 The legal necessity and/or benefit to be derived from the procedure must substantially outweigh the risk to the plaintiff. The standards to be employed must be flexible, and each case must be judged on its own individual unique circumstances. In this case the trial court erred in ordering the MRI because of defendant's failure to establish by competent medical evidence the necessity for the examination.
Id. 169 Ill.Dec. at 59-60, 590 N.E.2d at 978-79; accord Wright & Miller, supra, § 2235 at 682-83.
When the circuit court made its ruling on Respondent's motion to compel, it apparently had no knowledge of the specific risk involved to John David based upon his allergic reaction to the sedatives normally administered prior to an MRI. While the record clearly reveals that Petitioners' counsel did not learn of the allergic reaction problem until two days after the hearing on the motion to compel,[5] no explanation is offered for the delay in this discovery. Certainly the circuit court should have been made aware of the specific risk that was involved in subjecting John David to the MRI. The absence of this extremely relevant information together with Respondent's failure to meet its burden of showing good cause obligated the trial court to fulfill its Rule 35 function in a virtual vacuum.
Prior to entering an order which compels an independent medical examination pursuant to Rule 35 of the West Virginia Rules of Civil Procedure, a circuit court must find that the movant has demonstrated good cause with regard to the need for such examination. Because the record in this case is devoid of any showing of good cause to demonstrate the relevance or need of the MRI requested by Respondents, this case is remanded to the circuit court for further proceedings. Upon remand, the circuit court will have to reconsider whether an MRI is warranted, first on the grounds of relevance and necessity, and second, in the context of John David's allergic history to the sedatives necessary to complete the examination. We hereby adopt the burden-shifting approach applied in both Sarka and Stasiak for determining whether a proposed independent medical examination may be ordered. The initial burden is met when a plaintiff or party[6] demonstrates that the requested procedure poses more than a minimal level of risk to him or her. The movant then has the burden of demonstrating through competent medical evidence that the procedure in issue is safe with respect to the intended examinee; specifically, that the procedure poses only a minimal level of risk. See Sarka, 207 Ill.App.3d at 595-96, 152 Ill. Dec. at 621, 566 N.E.2d at 308; Stasiak, 169 Ill.Dec. at 59, 590 N.E.2d at 978.
Based on the foregoing, the writ of prohibition is granted and this case is remanded to the Circuit Court of Kanawha County for further proceedings consistent with this opinion.
Writ granted and case remanded.
NOTES
[1] At the hearing, no evidence was presented on the motion to compel, only arguments of counsel.
[2] Although the Respondents initially requested that the MRI be performed in Morgantown by their expert, Dr. Bodensteiner, the affidavit of Dr. Bodensteiner taken on March 26, 1993, states that he "ha[s] no objection if the MRI examination is performed by the treating neurologist of John David Letts in Charleston, West Virginia." This apparent agreement to alter the location of the MRI resulted from Petitioners' objections to the Morgantown location following the entry of the lower court's order on the motion to compel. The affidavit was submitted to this Court in connection with the petition for a writ of prohibition. It was prepared subsequent to the circuit court hearing and thus was not part of the record before the circuit court at the time of the hearing.
[3] According to the petition in this case, John David is allergic to both chloral hydrate and phenobarbital, which is an ingredient in other sedative medications.
[4] Rule 215(a) of the Illinois Supreme Court Rules parallels the language of Rule 35(a) of the West Virginia Rules of Civil Procedure. Rule 215(a) provides in pertinent part as follows:

In any action in which the physical or mental condition of a party or of a person in his custody or legal control is in controversy, the court, upon notice and for good cause shown on motion made within a reasonable time before the trial, may order the party to submit to a physical or mental examination by a physician suggested by the party requesting the examination, or to produce for such examination the person in custody or under legal control who is to be examined.
134 Ill.2d R. 215(a) (1990).
[5] Petitioners allege that their counsel was apprised through a phone call with Barbara U. Morgan, John David's treating pediatric neurologist, on February 19, 1993, that John David has a history of being allergic to both chloral hydrate and phenobarbital.
[6] The United States Supreme Court ruled in Schlagenhauf that Rule 35 is not limited to plaintiffs in application; it "applies to all `parties.'" See 379 U.S. at 112, 85 S.Ct. at 239.