551 S.E.2d 46

**Betty J. PLUMMER, Appellant,**

v.

**WORKERS' COMPENSATION DIVISION and B.F. Goodrich Company, Appellees.**

No. 28678.

Supreme Court of Appeals of West Virginia.

Submitted June 5, 2001.

Decided June 29, 2001.

Dissenting Opinion of Justice Davis July 6, 2001.

Colin M. Cline, Esq., Katz, Kantor & Perkins, Princeton, West Virginia, Attorney for Appellant.

Gretchen E. Pyles, Esq., Jackson & Kelly, Charleston, West Virginia, Attorney for Appellee.

McGRAW, Chief Justice:

An employee claiming a workplace injury from exposure to toxic fumes appeals the denial of her workers' compensation claim. The Workers' Compensation Division (the "Division") found that the employee did not present sufficient evidence to demonstrate her injury was connected to her work. The Office of Judges (the "OOJ") affirmed, and refused to consider evidence submitted by the employee after the expiration of a "time frame" for evidence introduction. The Workers' Compensation Appeal Board (the "WCAB") affirmed the original decision, and the decision to exclude the offered evidence. In her appeal to this Court, the appellant argues that the OOJ should have considered her additional evidence, or ruled her claim compensable on the original evidence presented. We find that the OOJ and WCAB erred in not considering the additional evidence and reverse.

## I.

## BACKGROUND

Appellant Betty J. Plummer worked for 23 years at the B.F. Goodrich plant in Union, Monroe County, West Virginia. The plant made, at least at the time in question, deicing equipment for airplanes, which required the cutting, gluing and preparing of rubber parts. One of Ms. Plummer's jobs was to operate one of several laser cutting machines that put serial numbers onto the final product.

Hoods on these machines were intended to prevent the worker from being exposed to fumes produced by the laser cutting process. Ms. Plummer alleged that parts were sometimes too large to fit under the hood, so employees were told to use the machine with the hood up. Ms. Plummer complains that this exposed her to fumes from the laser cutting process, as well as increased concentrations of other plant fumes, which were drawn past her by the exhaust fan in the open hood.

On February 1, 1996, Ms. Plummer was overcome by fumes. She complained of numbness in her face and extremities, swelling and redness in her face, and difficulty

breathing. A company nurse checked her condition, and asked her to perform a breathing test, but she was unable to generate sufficient airflow to get a reading on the test. She was sent back to work with a respirator for the rest of the day, and did not return to work after that time. Ms. Plummer visited her doctor the next day. Although her doctor found her condition to be consistent with both acute and chronic exposure to fumes, he apparently suggested benzine exposure as the cause. Ms. Plummer was also seen by a doctor on behalf of B.F. Goodrich on February 14, 1996. This doctor found that Ms. Plummer's complaints were most likely not work related, and were probably due to either allergies or depression.

Limiting its analysis to her initial claim form and the report from the company's doctor, the Division denied her claim on July 24, 1996. Ms. Plummer appealed that decision to the OOJ within the time limit set by statute. After an unexplained period of inaction, the OOJ issued a so-called "time frame order" that established a period of time for the parties to present evidence in the dispute. B.F. Goodrich requested an extension of this time frame, and Ms. Plummer joined in that request. On March 24, 1998, the OOJ extended the time frame order for ninety days, setting it to expire on or about June 24, 1998.

Lawyers representing Ms. Plummer, meanwhile, had applied on her behalf for social security disability benefits for alleged chemical sensitivity that made it impossible for her to return to her former job. The Social Security Administration ruled in Ms. Plummer's favor on this claim. Also during this time, the firm representing Ms. Plummer experienced some personnel changes, leading to a change in the lawyer representing her. According to Ms. Plummer and her counsel, because of the social security proceeding and the change in representation, she was unable to present any additional evidence to the OOJ before the time frame order expired. On July 7, 1998, after the expiration of the time frame for presenting evidence, the OOJ entered an order that officially submitted the matter for decision. About three weeks later, on July 24, Ms.

Plummer's counsel, hoping to introduce more evidence, made a motion to set aside the July 7 order that "submitted" the case, and asked for an extension of the time frame. Along with this motion, Ms. Plummer's counsel submitted additional evidence, including additional medical reports from specialists who had diagnosed her with problems relating to chemical exposure, along with information concerning the various chemicals that may have been in use at the plant.

Yet in spite of Ms. Plummer's explanation, on September 14, 1998, an Administrative Law Judge working in the OOJ denied Ms. Plummer's motion to extend the time frame and affirmed the prior denial of her claim by the Division. In that decision, the ALJ noted that she had not considered the additional evidence because Ms. Plummer offered it after the case had been "submitted" for a final decision. Ms. Plummer appealed to the WCAB, which eventually found against her and again affirmed the denial of her claim on April 30, 1999. It is from this order that she appeals to this Court.

Beneath this blizzard of dates, orders, and hearings, Ms. Plummer makes two basic arguments. First, she argues that the OOJ erred by finding that no good cause existed for extending the time frame order and thereby refusing to consider her additional evidence; second, she asserts that even without considering the excluded material, the OOJ had enough evidence to find in favor of Ms. Plummer. Because we find that the OOJ erred by failing to find "good cause" to extend the time frame order to permit the introduction of additional evidence, we reverse.

## II.

### STANDARD OF REVIEW

■ In most cases we show substantial deference to the factual findings of the Workers' Compensation Appeal Board: "This Court will not reverse a finding of fact made by the Workmen's Compensation Appeal Board unless it appears from the proof upon which the appeal board acted that the finding is plainly wrong." Syllabus, *Rushman v. Lewis,* 173 W.Va. 149, 313 S.E.2d 426 (1984)

(citation omitted). However, our review of its legal conclusions is not so limited: "We are not required to, and do not, judge [the Appeal Board's] legal conclusions by a 'clearly wrong' standard." *Conley v. Workers' Comp. Div.*, 199 W.Va. 196, 199, 483 S.E.2d 542, 545 (1997) (alteration in original) (internal citations omitted) (quoting *West Virginia Judicial Inquiry Comm'n. v. Dostert*, 165 W.Va. 233, 235 n. 3, 271 S.E.2d 427, 429 n. 3 (1980)).

## III.

## DISCUSSION

■ Several assignments of error are made by Ms. Plummer. She argues that both the OOJ and the WCAB erred in not allowing the consideration or examination of her additional evidence because she failed to offer that evidence before the expiration of the time frame order. She also argues that the OOJ should have ruled in her favor based on the evidence already in the record, and that the OOJ and WCAB applied the wrong "evidentiary burden" in examining her claim. At the outset of our discussion, we reiterate why our Legislature first enacted our Workers' Compensation Act:

> The paramount reason for such legislation was, of course, that under the common law tort system workers injured in industrial accidents recovered compensatory damages in a rather small percentage of cases.

> The common law tort system with its defenses of contributory negligence, assumption of risk and the fellow servant rule was considered inimical to the public welfare and was replaced by a new and revolutionary system wherein "fault" became immaterial—essentially a no-fault system.

> The Workmen's Compensation Act was designed to remove *negligently* caused industrial accidents from the common law tort system.

*Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 699–700, 246 S.E.2d 907, 910–11 (1978) (emphasis in original).

■ Consistent with this historical perspective,[1] we have long acknowledged that the Workers' Compensation Act is remedial legislation that has as its primary purpose helping injured workers: "The Workmen's Compensation Law is remedial in its nature, and must be given a liberal construction to accomplish the purpose intended." Syl. pt. 3, *McVey v. Chesapeake & Potomac Telephone Co.*, 103 W.Va. 519, 138 S.E. 97 (1927) (citation omitted).

Over the years since the enactment of our Workers' Compensation Act, a great number of cases have espoused this principal of liberality:

> "Compensation Acts, being highly remedial in character, though in derogation of the common law, should be liberally and

1. We have explained, with the help of a Wisconsin court, that the Legislature enacted our workers' compensation law in order to internalize the societal costs of employee injuries to the benefit of employees, employers, and the public at large. Just as it was to no one's benefit to allow injured workers to languish uncompensated, it was equally harmful to saddle industry with a constant barrage of lawsuits for each and every negligent workplace injury:

> The courts should fully appreciate that and be imbued with and guided by the manifest intent of the law to eradicate, utterly, the injustice to employers and employees, and the public as well, of the old system, and to substitute in its place an entirely new one based on the highest conception of man's humanity to man and obligation to industry upon which all depend; recognizing the aggregate of its attending accidents as an element of cost to be liquidated and balanced in money in the course of consumption-a system dealing with employees,

employers, and the public as necessarily mutual participants in bearing the burdens of such accidents, displacing the one dealing only with the class of injuries happening through inadvertent failure, without real moral turpitude, to exercise average human care, and placing employee and employer, whose interests are economically the same, in the false position of adversaries, to the misfortune of both and the public, intensified by opportunity for those concerned as judicial assistants to profit by such misfortunes. Most lamentable it will be, if this new system-so freighted with hopes for the minimizing of human burdens and their equitable distribution-shall not endure and be perfected to the best that human wisdom can attain.

*McVey v. Chesapeake & Potomac Telephone Co.*, 103 W.Va. 519, 522–3, 138 S.E. 97, 98 (1927) (quoting *Milwaukee v. Miller*, 154 Wis. 652, 144 N.W. 188 (1913)).

broadly construed to effect their beneficient [*sic*] purpose." *Sole v. Kindelberger*, 91 W.Va. 603, 114 S.E. 151, 153 (1922). We consistently apply a liberality rule in workmen's compensation cases. *Zackery v. State Workmen's Compensation Commission*, 162 W.Va. 932, 253 S.E.2d 532 (1979); *Johnson v. State Workmen's Compensation Commissioner*, 155 W.Va. 624, 186 S.E.2d 771 (1972); *Morris v. State Compensation Commissioner*, 135 W.Va. 425, 64 S.E.2d 496 (1951); *McVey v. Chesapeake & Potomac Telephone Co.*, 103 W.Va. 519, 138 S.E. 97 (1927).

*Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 166, 291 S.E.2d 477, 481 (1982).

Often repeated in our jurisprudence is this notion of liberality and the idea that the law exists to aid workers in their recovery and not to thwart them. Consistent with this view, the Legislature established that:

> The commissioner shall not be bound by the usual common-law or statutory rules of evidence, but shall adopt formal rules of practice and procedure as herein provided, and may make investigations in such manner as in his judgment is best calculated to ascertain the substantial rights of the parties and to carry out the provisions of this chapter.

W. Va.Code § 23–1–15 (1923).

When reviewing this statutory provision, an earlier Court noted that the Court must bear in mind the intent of the Legislature when considering cases under the Act:

> In our interpretation of the compensation act we must remember that our Legislature has shown an earnest endeavor above everything else to give material justice its due while formal rules of jurisprudence are pushed aside. We do not cling to the letter but on the contrary the interpretation is to be liberal and in keeping with the spirit of our legislation.

**2.** The Court continued in *Machala* that:
Should not section 44 of our act be so read? [Now W. Va.Code § 23–1–15] I think that the statute is significant as revealing the method of interpretation which must be applied if the social benefits which the law was designed to promote are to be substantially realized. We have here not only the explicit sanction for a

*Machala v. State Compensation Comm'r*, 109 W.Va. 413, 415–16, 155 S.E. 169, 170 (1930) [2]. And as this Court noted in an earlier case that implicated the forerunner of W. Va.Code § 23–1–15 (1923):

> [O]ther expressions of both statutes unmistakably evince an intention to preclude a strict construction in avoidance of the purposes of these enactments. *They are to be construed and enforced untrammeled by technicalities or restrictions except such as are provided in the acts themselves.* For, according to section 44 of both acts, the administrator of the fund "shall not be bound by the usual common-law or statutory rules of evidence, or by any technical or formal rules of procedure other than herein provided, but may make investigations in such manner as in his judgment is best calculated to sustain the substantial rights of the parties and to carry out justly and liberally the spirit of this act."

*Culurides v. Ott*, 78 W.Va. 696, 699, 90 S.E. 270, 271 (1916) (emphasis added).

This analysis led the Court in *Culurides* to conclude that: "[The Workers' Compensation Act] requir[es] the state compensation commissioner in administering the workmen's compensation fund, to ascertain the substantial rights of the claimants in such manner as will carry out justly and liberally the spirit of the act, unrestricted by technical and formal rules of procedure . . . ." Syllabus, *in part, Culurides v. Ott*, 78 W.Va. 696, 90 S.E. 270 (1916) (citation omitted); *accord, Thacker v. Workers' Compensation Div.*, 207 W.Va. 241, 531 S.E.2d 66 (1999) (*per curiam*).

Not lost on us is the fact that no one could consider the authors of these earlier opinions to be raging liberals by today's standards. They wrote at a time when life was cheaper, injuries more frequent, and most modern tort concepts remained inchoate. Indeed, the authors of *Culurides v. Ott* lived not only

departure from the common law rules of proof but a direct legislative command that the commissioner shall not be bound by "comon [*sic*] law or statutory rules of evidence."
*Machala v. State Compensation Comm'r*, 109 W.Va. 413, 416, 155 S.E. 169, 170 (1930) (citation omitted).

before the days of comparative negligence, but before our laws even permitted women to vote. It would be bizarre in the extreme if in the 21st century we were to take any position less favorable to the injured worker than our brethren of the early twentieth century were able to muster, shackled as they were by the conservatism of their era.

Bearing this standard in mind, we consider the decisions of the WCAB and the OOJ. The Administrative Law Judge at the OOJ found that Ms. Plummer "failed to show good cause as to why the Order Submitting the Protest should be set aside." The WCAB, without specific comment, affirmed the decision of the OOJ.

The Legislature has empowered the OOJ to craft rules of practice and procedure for the review of disputed claims:

> Subject to the approval of the compensation programs performance council pursuant to subdivisions (b) and (c), section seven, article three, chapter twenty-one-a of this code, the office of judges shall from time to time promulgate rules of practice and procedure for the hearing and determination of all objections to findings or orders of the workers' compensation division pursuant to section one of this article. The office of judges shall not have the power to initiate or to promulgate legislative rules as that phrase is defined in article three, chapter twenty-nine-a of this code.

W. Va.Code § 23–5–8(e) (2000). The establishment of a time frame order is governed by just such a rule, and thus we note that we are not considering in this case a jurisdictional time limit explicitly imposed by statute.

We have previously considered how a claimant is affected when the claimant misses the deadline to object to a decision, or to make appeal to the WCAB or this Court:

> In *Bailey* [*v. State Workmen's Compensation Comm'r*, 170 W.Va. 771, 296 S.E.2d 901 (1982)], we recognized the inequities and hardships that occasionally occurred as a result of the thirty-day time periods for objections to the Commissioner's orders and for appeals to the Appeal Board and to this Court in workers' compensation cases. We concluded in Syllabus Point 1

of *Bailey* that our prior case law declaring these time periods to be mandatory and jurisdictional was unduly harsh. In its place, we established a rule of excusable neglect, which we outlined in Syllabus Point 2 of *Bailey*.

*Thompson v. Workers' Compensation Comm'r*, 180 W.Va. 720, 722, 379 S.E.2d 770, 772 (1989).

After finding that these deadlines, under the statutory framework of that time, were not jurisdictional, the Court attempted to define what situations would allow a party to miss a deadline: " 'Excusable neglect seems to require a demonstration of good faith on the part of the party seeking an enlargement [of time] and some reasonable basis for non-compliance within the time specified in the rules. Absent a showing along these lines, relief will be denied.' " *Bailey v. State Workmen's Compensation Comm'r*, 170 W.Va. 771, 777 n. 8, 296 S.E.2d 901, 907 n. 8 (1982) (footnotes omitted) (quoting 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure:* Civil § 1165 (1969)).

However, as more recent cases illustrate, legislative response essentially overruled our holding in *Bailey*:

> We recognized in *Fucillo v. Workers' Compensation Comm'r*, 180 W.Va. 595, 378 S.E.2d 637 (1988), that the 1986 legislative amendments to the workers' compensation statute regarding filings and objections were designed to alter our holding in *Bailey v. State Workmen's Compensation Comm'r*, 170 W.Va. 771, 296 S.E.2d 901 (1982), and stated that the legislative amendments are limited to cases arising after the effective date of the amendments, i.e., March 7, 1986.

*Thompson v. Workers' Compensation Com'r*, 180 W.Va. 720, 722, 379 S.E.2d 770, 772 (1989). We mention *Bailey* and its progeny only to differentiate those cases where the dispute centered on explicit statutory deadlines from the instant case, which concerns an internal rule of practice and procedure.

When we examine the procedural rule that was in place at the time Ms. Plummer attempted to present her evidence in July of

1998, we see that the Administrative Law Judge that heard the case had the discretion to allow such evidence after the expiration of the time frame:

> Any requests for extension of time, *in the absence of a showing of good cause,* must be made not less than thirty (30) days prior to the expiration of the time period which the moving party seeks to expand. Such requests shall set forth the reasons the expansion of time is necessary and shall include a statement of the efforts the party has made to comply with the Time Frame Order. · The failure to offer evidence in compliance with any Time Frame Order or extension thereof *may result* in the claim being submitted insofar as that party is concerned based on the evidence in the record at that point in time.

93 W. Va.C.S.R. § 1–2.9(b) (1992) (emphasis added).[3] The clear implication of the phrase "in the absence of a showing of good cause" is that the OOJ need not refuse a request for an extension of time made after the deadline if the party requesting the extension has made a showing of good cause for the delay.

 It is important to note again that this rule is not a statutory rule, and our interpretation of it must be guided by the overall purposes of the Act:

> Whenever an application for compensation, based on an apparently meritorious claim, seems sufficient and regular, and indicates an intention on the part of the claimant or those acting for and on his behalf to assert such claim and demand contribution out of the fund set apart for that purpose, as in this case, it ought not to be defeated by a strict adherence to

rules of procedure not expressed in the statute, although formulated pursuant to its authorization. Certainly, such defeasance should not be permitted under a statute which in terms requires a construction according to equitable principles, free and untrammeled by formal and technical rules of procedure.

*Culurides v. Ott,* 78 W.Va. 696, 701, 90 S.E. 270, 272 (1916). The passage of time notwithstanding, this logic still applies. Thus we hold that the Office of Judges of the Workers' Compensation Division must accept and consider evidence submitted by a claimant after the expiration of a time frame order, provided that the claimant has shown good cause for the delay.

Ms. Plummer, by counsel, explained in a letter dated July 24, 1998, her reasons for not complying with the time frame order. She had applied for, and eventually won, social security benefits because her sensitivity to fumes made it impossible for her to return to work. Because she had private disability insurance, most, if not all, of those benefits from the Social Security Administration were paid to her private insurance carrier in subrogation. Ms. Plummer or her counsel believed that any workers' compensation benefits might also be entirely subrogated to the insurance company. The firm representing Ms. Plummer explained that they felt they had a duty to determine the economic benefit to Ms. Plummer if she were to prevail in her workers' compensation claim before proceeding and perhaps incurring costs chargeable to Ms. Plummer.

---

**3.** While the administrative rules changed somewhat in 1999, after the OOJ issued a final decision on September 14, 1998, the new rule gives the latitude to extend a time frame, *sua sponte:*

> Time Frame Orders. A Time Frame Order shall set forth the sequence in which evidence shall be presented by the parties and the time periods within which such evidence shall be presented. A Time Frame Order may include such other matters as deemed appropriate by the Chief Administrative Law Judge or his/her designee. A Time Frame Order may be modified, amended or extended at the request of a party, but only for good cause shown, except that the Office of Judges may modify or amend a Time Frame Order without such a request

for appropriate administrative purposes. A request for modification, amendment or extension must be in writing and must be made no later than ten (10) days prior to the expiration of the existing Time Frame Order or the time period which the moving party seeks to expand. Any request for an expansion of time must set forth the reason an expansion is necessary and shall include a statement of the efforts the party has made to comply with the Time Frame Order. The Office of Judges shall issue guidelines for determining good cause. Such guidelines are not intended to be procedural rules, and may be amended from time to time as deemed necessary.

93 W. Va.C.S.R. § 1–2.3(h) (1999).

■ We feel that, in the light of our liberal interpretation of the workers' compensation law, Ms. Plummer established good cause for the delay in her case. We find that the OOJ erred by failing to find "good cause" to extend the time frame order to permit the introduction of additional evidence, and that the WCAB erred in its affirmation of the decision. Accordingly, we reverse the decision of the WCAB and the OOJ, and remand this case to the OOJ for proceedings consistent with this opinion.

## IV.

### CONCLUSION

For the reasons stated, the order of the Workers' Compensation Appeal Board is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

DAVIS, Justice, dissenting:

(Filed July 6, 2001)

This case presented a straight forward issue concerning whether the appellant, Betty J. Plummer, established good cause for introducing evidence in her workers' compensation case after the expiration of a time frame order entered by an administrative law judge. The majority opinion has ruled that good cause was shown. In rendering this decision, the majority opinion has effectively reduced the meaning of "good cause" to any explanation proffered. I do not subscribe to this de minimis standard. I, therefore, dissent from the majority opinion in this case.

The majority opinion correctly points out that under the applicable administrative rules, the parties had to request an extension of the time frame order thirty days before the time frame expired. Ms. Plummer and the employer, B.F. Goodrich Company, did in fact make a joint motion for an extension of the initial time frame order within the thirty day limit. Thus, the administrative law judge appropriately granted the first extension.

Thereafter, Ms. Plummer sought a second extension of the time frame order, for the purpose of submitting additional evidence. Unlike the first request for an extension of the time frame order, however, Ms. Plummer's second request was made *after* the time frame order had expired. Under this scenario, the administrative rule required Ms. Plummer to show good cause for failing to timely request an extension of the time frame order. The administrative law judge and the Workers's Compensation Appeal Board found that Ms. Plummer did not show good cause. The majority opinion in this case disagreed with the lower tribunals. I believe the majority opinion is wrong for two reasons: (1) good cause was not shown by Ms. Plummer, and (2) the wrong standard of review was used.

### A. Good Cause was not Demonstrated in this Case

Counsel for Ms. Plummer has indicated that a timely request for an extension of the time frame order was not made because counsel was occupied with obtaining social security benefits for Ms. Plummer. The majority opinion has found that this was good cause. I disagree. This explanation constituted nothing more than an attorney's failure to follow a time frame order.

Good cause is necessarily fact specific. Consequently, no rigid rule should be crafted to determine good cause. I do believe, however, that a threshold exists for what may be considered good cause. The " 'good cause' requirement ... 'is not a mere formality.' " *State ex rel. Letts by Letts v. Zakaib*, 189 W.Va. 616, 618, 433 S.E.2d 554, 556 (1993) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S.Ct. 234, 242, 13 L.Ed.2d 152 (1964)). Establishing good cause "puts the burden on the party seeking relief to show some *plainly adequate* reason therefor[,]" not merely *any reason. AT & T Communications of West Virginia, Inc. v. Public Serv. Comm'n of West Virginia*, 188 W.Va. 250, 253, 423 S.E.2d 859, 862 (1992) (emphasis added). Our jurisprudence has long "held that ... 'good cause can only appear by showing ... some ... circumstance beyond the control of the party, and free from neglect on his part.' " *Winona Nat'l. Bank v. Fridley*, 122 W.Va. 479, 481, 10 S.E.2d 907, 908 (1940) (quoting Syl. pt. 1, *Post v. Carr*, 42 W.Va. 72, 24 S.E. 583 (1896)). By permitting

an attorney's failure to comply with a time frame order to constitute good cause, the majority opinion has effectively rendered good cause meaningless. *See Dimon v. Mansy*, 198 W.Va. 40, 47, 479 S.E.2d 339, 346 (1996) ("The plaintiff's proffer of good cause establishes a standard that would do away with this requirement.").

As we said in *Taylor v. Smith*, 171 W.Va. 665, 667, 301 S.E.2d 621, 624 (1983), "[t]he law aids those who are diligent, not those who sleep upon their rights." Ms. Plummer slept on her rights. This new and intolerable standard will make it impossible for administrative law judges to control their dockets and render timely decisions, because litigants will be able to indefinitely introduce additional evidence and extend litigation by simply saying "I was busy doing something else."

### B. The Wrong Standard of Review was Applied.

The majority opinion in this case applied the clearly wrong standard of review to the ultimate conclusion reached by the lower tribunals. The proper standard for our review of the ultimate disposition of this case by the lower tribunals is the abuse of discretion standard. *See* Syl. pt. 2, *Willard v. State Workmen's Comp. Comm'r*, 155 W.Va. 114, 181 S.E.2d 278 (1971) ("Consideration of a medical report in support of an application to reopen a claim for workmen's compensation ... is in the sound discretion of the Workmen's Compensation Appeal Board and its ruling in refusing to consider the medical report ... will not be disturbed by this Court on appeal unless it clearly appears that such action constituted an abuse of discretion."); Syl. pt. 2, in part, *State ex rel. Shorter v. Hey*, 170 W.Va. 249, 294 S.E.2d 51 (1981) ("The determination of what is good

cause ... is in the sound discretion of the trial court[.]").

The "clearly wrong" [1] standard of review is applicable to findings of fact. In this case, there was no dispute as to any of the relevant facts. That is, there was no dispute that Ms. Plummer failed to timely file a request for an extension of the time frame order. The contestable issue in this case concerned whether or not Ms. Plummer established good cause in failing to make a timely request for an extension of the time frame order. The lower tribunals found that the reason proffered did not constitute good cause, and therefore denied submission and consideration of the late evidence. The majority opinion applied the clearly wrong standard of review to this disposition in order to impose the result it sought to reach. Our cases have made clear that "[w]here the law commits a determination to a [lower tribunal] and [its] discretion is exercised with judicial balance, the decision should not be overruled unless the reviewing court is actuated, not by a desire to reach a different result, but by a firm conviction that an abuse of discretion has been committed." *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970) (citation and internal quotations omitted). Nothing in the majority opinion points to an abuse of discretion by the lower tribunals. There was no abuse of discretion.

For the reasons stated, I respectfully dissent. I am authorized to state that Justice MAYNARD joins me in this dissenting opinion.

---

1. Our cases use "clearly wrong" and "plainly wrong" interchangeably. *See Conley v. Workers' Comp. Div.*, 199 W.Va. 196, 199 n. 5, 483 S.E.2d 542, 545 n. 5 (1997) ("It will be noted that our cases have used the term[s] 'clearly wrong' and 'plainly wrong' interchangeably.")