602 S.E.2d 805

WAMPLER FOODS, INC., Appellant,

v.

WORKERS' COMPENSATION DIVISION, Tammy S. Pancake, and Gregory Burton, Executive Director of Workers' Compensation Commission, Appellees.

State of West Virginia, ex rel. Charles Thompson, Petitioner.

v.

Gregory A. Burton, Executive Director, West Virginia Workers' Compensation Commission, Respondent.

State of West Virginia ex rel. Morris Yoakum, Robert Carpenter, Gale Fraley, Alan Kiblinger, Gilbert Kuehl, Robert Meadows, Leonard Davis, and Gene Martin, Petitioners

v.

Gregory A. Burton, Executive Director, West Virginia Workers' Compensation Commission, Respondent.

Nos. 31599, 31600, 31653.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 2004.

Decided July 1, 2004.

Concurring Opinion of Justice Davis Aug. 24, 2004.

Claudia W. Bentley, Esq., Tracey A. Rohrbaugh, Esq., Bowles, Rice, McDavid, Graff & Love, PLLC, Martinsburg, West Virginia, Attorneys for Appellant Pilgrim's Pride Corp. (formerly Wampler Foods, Inc.).

F. Cody Pancake, III, Esq., Keyser, West Virginia, Attorney for Appellee Tammy S. Pancake.

Gregory S. Prudich, Esq., Sanders, Austin, Prudich & Flanigan, Princeton, West Virginia, Attorney for Petitioner Charles Thompson.

Timothy E. Huffman, Esq., Jessica Rodecker, Esq., Jackson Kelly PLLC, Charleston, West Virginia, Attorneys for *Amicus Curiae* West Virginia Chamber of Commerce.

Thomas J. Obrokta, Jr., Esq., Donald L. Hall, Esq., Richard M. Crynock, Esq., West Virginia Workers' Compensation Commission, Legal Services Division, Charleston, West Virginia, Attorneys for Respondent Gregory A. Burton.

Robert M. Bastress, Esq., Morgantown, Bradley J. Pyles, Esq., Logan, Don M. Stacy, Esq., Beckley, West Virginia, Attorneys for Petitioners Morris Yoakum, et al.

Paul T. Farrell, Jr., Esq., Wilson, Frame, Benninger & Metheney, PLLC, Morgantown,

West Virginia, Attorney for *Amicus Curiae* West Virginia Trial Lawyers Association.

PER CURIAM:

In these three consolidated cases, we are asked to consider four statutory changes made by the Legislature in the adoption of Senate Bill 2013 ("S.B.2013"), effective July 1, 2003. In each case, we are asked to examine whether and to what extent the statutory changes could constitutionally be applied retroactively to cases filed before July 1, 2003.

After careful consideration of the record in each case, the briefs and arguments of the parties, and all other matters of record, as set forth below, we find that the unique interpretation given to S.B.2013 by the West Virginia Workers' Compensation Division [1] regarding the retroactive application of those four statutes meets with constitutional, substantive due process protections.

## I.

### A. *Wampler Foods v. Workers' Compensation Division*

This case presents an appeal of a July 15, 2003 decision by the Workers' Compensation Appeal Board ("Appeal Board") [2] which affirmed a decision by the Workers' Compensation Office of Judges. The appellant, Wampler Foods, Inc.,[3] challenges the means used by the Appeal Board to reach its decision, in light of two statutory changes that took effect on July 1, 2003.

Appellee Tammy S. Pancake filed a workers' compensation claim in August 2001 alleging that, as a result of her employment in the appellant's poultry plant, she had injured her left wrist through repetitive actions while processing chickens. By an order dated October 8, 2001, the Workers' Compensation Division ("the Division") denied the claim, finding that "neither an occupational injury nor an occupational disease occurred."

The appellee protested the Division's order to the Office of Judges. An administrative law judge examined the parties' evidence and concluded that "[a]ll of the medical doctors of record have opined that the [appellee]'s left wrist and forearm problems are related to her employment," and that there was no evidence in the record to suggest otherwise. The administrative law judge therefore concluded that Ms. Pancake had "sustained a compensable injury in the course of and as a result of her employment activities with Wampler Foods, Inc." On December 4, 2002, the Office of Judges issued an order reversing the Division's October 8, 2001 order, holding that "the claim is compensable for a left wrist and forearm injury."

The appellant appealed the order to the Workers' Compensation Appeal Board. A hearing was held on July 2, 2003—one day after the S.B.2013 statutory changes took effect—and on July 15, 2003, the Appeal Board issued a written decision affirming the decision of the Office of Judges. In doing so, the Appeal Board stated:

> The Workers' Compensation Appeal Board has completed a thorough review of the record, briefs, and argument. As required, the Workers' Compensation Appeal Board has evaluated the decision of the Office of Judges in light of its manner of applying, or misapplying, the liberality rule . . . .

The Appeal Board's decision covers only a page-and-a-half, and contains no citations to the record or the applicable law.

The appellant subsequently petitioned this Court for review of the Appeal Board's deci-

---

**1.** Effective October 1, 2003, the "workers' compensation division of the bureau of employment programs" was reconstituted and renamed the "workers' compensation commission, an agency of the state." *See* W.Va.Code, 23–1–1 [2003].

We do not consider the Legislature's alterations to the bureaucratic structure of the workers' compensation system in the instant case, and continue to refer to the governmental units by their pre-July 1, 2003 names.

**2.** Effective January 31, 2004, the Legislature abolished the Workers' Compensation Appeal Board. In its stead, the Legislature created the Workers' Compensation Board of Review, a full-time panel empowered and staffed to review appeals from the Office of Judges. *See* W.Va. Code, 23–5–11 [2003].

**3.** The appellant is now known as Pilgrim's Pride Corporation.

sion, contending that the Appeal Board's decision must be reversed because the Board failed to comply with two statutory amendments contained in S.B.2013.[4] First, the appellant argues that the Appeal Board failed to comply with *W.Va.Code*, 23–4–1g [2003], a statute that the appellant asserts eliminated or altered the use of the "rule of liberality" in the interpretation of evidence in workers' compensation claims. That statute states:

(a) For all awards made on or after the effective date of the amendment and reenactment of this section during the year two thousand three, resolution of any issue raised in administering this chapter shall be based on a weighing of all evidence pertaining to the issue and a finding that a preponderance of the evidence supports the chosen manner of resolution. The process of weighing evidence shall include, but not be limited to, an assessment of the relevance, credibility, materiality and reliability that the evidence possesses in the context of the issue presented. Under no circumstances will an issue be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position. If, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted.

(b) Except as provided in subsection (a) of this section, a claim for compensation filed pursuant to this chapter must be decided on its merit and not according to any principle that requires statutes governing workers' compensation to be liberally construed because they are remedial in nature. No such principle may be used in the application of law to the facts of a case arising out of this chapter or in determining the constitutionality of this chapter.

The appellant contends that the Appeal Board's post-July 1, 2003 statement that it evaluated "the decision of the Office of Judges in light of its manner of applying, or misapplying, the liberality rule" is contrary to this statute, and constitutes reversible error.

Second, the appellant argues that *W.Va. Code*, 23–5–12 [2003] requires the Appeal Board to issue its decisions in writing, and to "state with specificity the laws and facts relied upon" in making a decision.[5] Because of the brevity of the Appeal Board's July 15, 2003 decision, the appellant asserts that reversible error has occurred and that the case should be remanded for a full and complete reappraisal.

### B. *State ex rel. Charles Thompson v. Gregory A. Burton*

This case is a petition for a writ of prohibition directed against the Commissioner of the Bureau of Employment Programs ("the Commissioner"), the government official charged with managing the Workers' Compensation Division.[6] The petitioner, who filed a claim for benefits prior to the introduction and passage of S.B.2013 by the Legislature, contends that the Division acted in an extra-constitutional fashion when it retroactively applied S.B.2013 to his claim. The petitioner argues that the Division violated his due process rights, and unconstitutionally

---

4. The appellant also asserts that the Board's order must be reversed because the evidentiary record is insufficient to support the decision. After review of the record, we reject this point of error.

5. *W.Va.Code*, 23–5–12(c)(1) [2003] sets forth, in pertinent part, the following duty:

(c) After a review of the case, the board shall issue a written decision to be filed with the commission and a copy thereof sent by mail to the parties.

(1) All decisions, findings of fact and conclusions of law of the board of review shall be in writing and state with specificity the laws and facts relied upon to sustain, reverse or modify the administrative law judge's decision.

6. As was suggested previously, *see supra* footnotes 1 and 2, S.B.2013 substantially reorganized the workers' compensation bureaucracy. Effective October 1, 2003, the Workers' Compensation Division was transformed into the Workers' Compensation Commission, and became a stand-alone, cabinet level commission no longer associated with the Bureau of Employment Programs. Mr. Burton became the Executive Director of the Commission at a salary of $130,008.00 annually, and is still the party responsible for awarding the petitioner relief.

deprived him of a vested right to certain workers' compensation benefits.

Petitioner Charles Thompson developed bilateral carpal tunnel syndrome in the course of and as a result of his employment as a roof bolter for U.S. Steel Mining Company. Mr. Thompson filed a workers' compensation claim on January 27, 2003, the claim was ruled compensable, and surgery to correct the condition was authorized and performed in March 2003.

On July 2, 2003, Mr. Thompson was seen and evaluated by a physician to consider what, if any, permanent impairment he suffered as a result of his compensable injury. By a report dated July 8, 2003, the physician opined that Mr. Thompson had suffered a six percent impairment. Based upon that report, on July 24, 2003, the Division entered an order granting Mr. Thompson a six percent permanent partial disability award.

In its July 24, 2003 order, the Division stated that Mr. Thompson was entitled to receive $11,902.46 for his permanent partial disability. The Division calculated Mr. Thompson's award under a statutory scheme that converted each percentage point of disability into four weeks of compensation. A claimant's weekly rate of compensation, prior to July 1, 2003, was calculated using a formula set by *W.Va.Code*, 23–4–6(e)(1) [1999].[7] That statute required the Division to calcu-

late a claimant's weekly rate of compensation at "sixty-six and two-thirds percent of the claimant's average weekly wage earnings, wherever earned, at the time of the date of injury[.]" However, the statute capped the maximum amount of a claimant's weekly rate of compensation at *"one hundred percent* of the average weekly wage in West Virginia." (Emphasis added.) The Division used the 1999 statute in computing Mr. Thompson's award on July 24, 2003.

Effective July 1, 2003, *W.Va.Code*, 23–4–6(e)(1) [2003] reduced the maximum amount of a claimant's weekly rate of compensation. The amended statute stated that for "all awards" made on or after July 1, 2003, the Division was to calculate a claimant's weekly rate of compensation at "sixty-six and two-thirds percent of the average weekly wage earnings, wherever earned, of the injured employee at the date of injury, not to exceed *seventy percent* of the average weekly wage in West Virginia." (Emphasis added.)[8]

Mr. Thompson's employer, U.S. Steel Mining Company, is a self-insured employer that elects to pay workers' compensation claims from its own fisc, and pays claimants in response to pay orders issued by the Division. The first pay order by the Division, for $7,226.50, was paid in full by the employer; the next pay order, for $2,154.96, was not.

---

**7.** Regarding the maximum benefits a claimant could receive under the old law, *W.Va.Code*, 23–4–6(e)(1) [1999] stated, in pertinent part:

> [I]f the injury causes permanent disability less than permanent total disability, the percentage of disability to total disability shall be determined and the award computed on the basis of four weeks' compensation for each percent of disability determined, at the maximum … benefit rates provided for in subdivision (d) of this section[.]

Subdivision (d), *W.Va.Code*, 23–4–6(d) [1999], stated, in pertinent part:

> [A] claimant shall be paid benefits so as not to exceed a maximum benefit of sixty-six and two-thirds percent of the claimant's average weekly wage earnings, wherever earned, at the time of the date of injury not to exceed one hundred percent of the average weekly wage in West Virginia.

**8.** *W.Va.Code*, 23–4–6(e)(1) [2003] now states:

> For all awards made on or after the effective date of the amendment and reenactment of

this section during the year two thousand three, if the injury causes permanent disability less than permanent total disability, the percentage of disability to total disability shall be determined and the award computed on the basis of four weeks' compensation for each percent of disability determined at the maximum or minimum benefit rates as follows: Sixty-six and two-thirds percent of the average weekly wage earnings, wherever earned, of the injured employee at the date of injury, not to exceed seventy percent of the average weekly wage in West Virginia: Provided, That in no event shall an award for permanent partial disability be subject to annual adjustments resulting from changes in the average weekly wage in West Virginia: Provided, however, That in the case of a claimant whose award was granted prior to the effective date of the amendment and reenactment of this section during the year two thousand three the maximum benefit rate shall be the rate applied under the prior enactment of this section which was in effect at the time the injury occurred.

Mr. Thompson's second check from the employer, dated August 22, 2003, was for only $1,602.38, and contained the following notation: "Benefit rate has been adjusted at the request of Workers Compensation as a result of S.B.2013." Mr. Thompson has therefore received a total of $8,828.88 for his permanent disability.

Mr. Thompson filed the instant petition for a writ of prohibition on September 25, 2003, seeking an order preventing the Commissioner from applying the 2003 amendments to *W.Va.Code,* 23–4–6(e)(1) contained in S.B. 2013, regarding the manner of calculating permanent partial disability benefits, to his claim. The petitioner seeks an order directing the Commissioner to calculate his benefits based upon the statute in effect on the date he was injured. Using such a calculation scheme, the petitioner would recover, by our estimate, an additional $3,073.58 for his permanent disability, for a total of $11,902.46 as provided for in the July 24, 2003 Division Order.

### C. *Morris Yoakum, et al.* *v. Gregory Burton*

This case is a petition for a writ of mandamus filed by eight claimants against the Commissioner. Seven of the claimants challenge the retroactive application of the 2003 amendments to *W.Va.Code,* 23–4–6(e)(1), the same amendment challenged by Mr. Thompson, under factual circumstances somewhat different from those of Mr. Thompson. The eighth claimant challenges the retroactive application of the 2003 amendments to *W.Va. Code;* 23–4–6a, concerning the criteria for awards for occupational pneumoconiosis.

Seven of the claimants have similar factual situations. Each claimant filed a claim for workers' compensation benefits well before July 1, 2003. Each claimant was—unlike in the case of Mr. Thompson—examined by a physician, and the physician submitted a report to the Division, *prior* to July 1, 2003 indicating that the claimant had sustained some percentage of permanent, partial disability. The Division delayed acting on each claimant's case until after July 1, 2003, and subsequently awarded and paid each claimant benefits calculated under the July 2003 amendments to *W.Va.Code,* 23–4–6(e)(1).

The benefits received by each claimant under the new law were less than what would have been received under the pre-July 2003 law.

For example, claimant Leonard Davis was injured on October 3, 2000, and filed a claim for benefits. In a report dated November 6, 2002, a physician indicated that Mr. Davis had a 7% permanent partial disability. The Division did not rule on the physician's report for eight months, until July 9, 2003, and awarded Mr. Davis a 7% permanent partial disability award. The Division stated in its original order that Mr. Davis would be entitled to $14,750.68—calculated under the aforementioned *W.Va.Code,* 23–4–6(e)(1) [1999]—but by an order dated September 22, 2003, the Division reduced Mr. Davis's award to $9,614.64. The Division's order contained the following explanation:

> The division has now implemented recent legislation regarding the calculation of awards. Due to this legislation your award has been recalculated and the amount is $9,614.64.

Another example is the claim of Alan Kiblinger, who was injured on the job on March 7, 2002. A doctor examined Mr. Kiblinger, and on March 3, 2003, recommended that Mr. Kiblinger receive an 8% permanent partial disability award for an upper extremity injury, and 5% for a lumbar injury. Eleven days later, on March 14, 2003, the Division granted Mr. Kiblinger an 8% award for only his upper extremity disability, and paid him $11,767.52 in benefits as calculated under the pre-July 2003 statutes.

It was not until August 12, 2003, however, that the Division ordered, based upon the same doctor's report and for the same occupational accident, that Mr. Kiblinger receive an additional 5% permanent partial disability award for his lumbar injury. At that time, applying the 1999 version of *W.Va.Code,* 23–4–6(e)(1), the Division calculated that Mr. Kiblinger was entitled to an additional $7,354.70 for his lumbar injury. However, on September 18, 2003, the Division reduced Mr. Kiblinger's award to $7,090.80, offering as an explanation the July 1, 2003 legislative amendments to *W.Va.Code,* 23–4–6(e)(1).

The factual situation of the eighth claimant is quite different from that of the other seven claimants in the petition, and thereby a different statute is implicated. Claimant Gene Martin is a retired coal miner who was last exposed to the hazards of breathing coal dust on December 9, 2002. Mr. Martin filed a claim for occupational pneumoconiosis benefits, and the Division ruled the claim compensable on a non-medical basis on March 21, 2003. Mr. Martin was subsequently referred to the Occupational Pneumoconiosis Board for a medical examination.

Mr. Martin was examined by the members of the Board, and on June 5, 2003, the Board reported to the Division that x-ray films of Mr. Martin's lungs showed evidence of pneumoconiosis caused by breathing dust. However, the Board found no evidence of breathing impairment caused by the pneumoconiosis. The statute in effect at that time, *W.Va.Code*, 23–4–6a [1995], permitted a claimant with a job-related lung injury similar to Mr. Martin's—that is, a claimant with x-ray evidence of pneumoconiosis but no evidence of measurable pulmonary impairment—to recover 20 weeks of benefits, equivalent to a 5% permanent partial disability award.[9] The Board therefore recommended that Mr. Martin receive a 5% permanent partial disability award. Based upon the 1995 version of *W.Va.Code*, 23–4–6a, and upon the Board's medical report, on July 21, 2003, the Division granted Mr. Martin a 5% permanent partial disability award.

On September 8, 2003, however, the Division issued an order rescinding Mr. Martin's permanent partial disability award. In doing so, the Division cited to legislative amendments to *W.Va.Code*, 23–4–6a that now require a claimant "whose award was granted on or after" July 1, 2003, to show evidence of measurable pulmonary impairment before being able to recover benefits for occupational pneumoconiosis. The amended statute eliminates benefits for those individuals who have occupational pneumoconiosis without measurable pulmonary impairment. *W.Va. Code*, 23–4–6a [2003] now states, in pertinent part:

> [F]or any employee who applies for occupational pneumoconiosis whose award was granted on or after the effective date of the amendment and reenactment of this section during the year two thousand three, there shall be no permanent partial disability awarded based solely upon a diagnosis of occupational pneumoconiosis, it being the intent of the Legislature to eliminate any permanent partial disability awards for occupational pneumoconiosis without a specific finding of measurable impairment.

These eight claimants filed the instant petition for a writ of mandamus seeking an order to compel the Commissioner to pay the claimants benefits calculated under the pre-July 1, 2003 version of *W.Va.Code*, 23–4–6(e)(1), or, in the case of Mr. Martin, to pay him benefits for his occupational pneumoconiosis under the pre-July 1, 2003 version of *W.Va.Code*, 23–4–6a.

## II.

When this Court examines a statutory appeal from the Workers' Compensation Appeal Board,[10] the Court will in most cases "show substantial deference to the factual

---

9. *W.Va.Code*, 23–4–6a [1995] stated, in pertinent part:

 [I]f it shall be determined by the division in accordance with the facts in the case and with the advice and recommendation of the occupational pneumoconiosis board that an employee has occupational pneumoconiosis, but without measurable pulmonary impairment therefrom, such employee shall be awarded and paid twenty weeks of benefits at the same benefit rate as hereinabove provided.

10. We note that, within S.B.2013, the Legislature revised the procedures for parties to follow when pursuing a statutory appeal of a workers' compensation case to this Court, and crafted dyslogistic standards of review for the Court to use. *See W.Va.Code*, 23–5–15 [2003]. This statutory appeal system established by the Legislature is substantially different from other, constitution-based methods by which the Court may review cases. *See, e.g., W.Va. Constitution*, Art. VIII, § 3 ("The supreme court of appeals shall have original jurisdiction of proceedings in … mandamus, prohibition and certiorari.")

We decline to attempt an interpretation or application of *W.Va.Code*, 23–5–15 [2003] in the instant case because, as we set forth in the text, the "award" on appeal to the Court plainly arose long before the effective date of the statute.

findings of the Workers' Compensation Appeal Board." *Plummer v. Workers' Compensation Division*, 209 W.Va. 710, 712, 551 S.E.2d 46, 48 (2001). However, when considering a question of law, as we are in the instant matter, our standard differs: "[w]hile the findings of fact of the appeal board are conclusive unless they are manifestly against the weight of the evidence, the legal conclusions of the appeal board, based upon such findings, are subject to review by the .courts." *Barnett v. State Workmen's Compensation Com'r.*, 153 W.Va. 796, 812, 172 S.E.2d 698, 707 (1970) (*quoting Emmel v. State Compensation Director*, 150 W.Va. 277, 145 S.E.2d 29 (1965)). We must also bear in mind that "[w]hen the Workers' Compensation Appeal Board reviews a ruling from the Workers' Compensation Office of Judges it must do so under the standard of review set out in W.Va.Code § 23–5–12(b)(1995), and failure to do so will be reversible error." Syllabus Point 6, *Conley v. Workers' Compensation Division*, 199 W.Va. 196, 483 S.E.2d 542 (1997). That *Code* section provides that the Appeal Board may only reverse the Office of Judges when the judge's findings are in violation of statute, in excess of the judge's statutory authority, made upon unlawful procedure, or affected by some error of law. The Appeal Board must also reverse if the administrative law judge's decision is clearly wrong, or arbitrary, capricious or characterized by abuse of discretion. *W.Va.Code*, 23–5–12(b) [1995].

A writ of "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). In order to determine whether a writ of prohibition should be granted we apply the following standard of review:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1)

whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

This Court has explained that "[m]andamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies." Syllabus Point 1, *State ex rel. Allstate Ins. Co. v. Union Public Service Dist.*, 151 W.Va. 207, 151 S.E.2d 102 (1966). A petitioner for a writ of mandamus must meet each element of our well-known three-part test:

> A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

With these standards in mind, we turn to the arguments of the parties.

## III.

"With this case, we again are called upon to navigate a course through the nebulous world of workers' compensation law." *State ex rel. ACF Industries, Inc. v. Vieweg*, 204 W.Va. 525, 536, 514 S.E.2d 176, 187 (1999).

Innumerable and intractable social, economic, legal, constitutional and political considerations are triggered whenever the Legislature modifies a workers' compensation statute, considerations that through hasty or ill-considered draftsmanship are often—as in the instant case—unfairly placed before this Court by the Legislature and the Executive. The byproduct is a *sui generis,* jurisprudential hodge-podge that stands alone from all other areas of the law, causing decisions rendered in the workers' compensation realm to be almost wholly unusable in any other area of the law, and vice-versa. It is into this miasma that we now wade.

The parties agree that the Legislature, by repeatedly indicating that certain enactments contained within S.B.2013 apply to any "award" issued by the Division on or after July 1, 2003, intended for S.B.2013 to apply retroactively to injuries that occurred and/or claims that were filed prior to that date. The Division has given S.B.2013 an interpretation that gives those statutory changes retroactive application in some instances, but not in others—instances which we discuss below. The issue before the Court is whether and to what extent the *West Virginia Constitution* allows the Legislature and the Division to so make those workers' compensation statutes retroactive.

█ The parties in the instant case dispute whether the retroactive application of various workers' compensation statutes violates our Due Process Clause, *W.Va. Const.* Art. III, § 10, in part. Under our Due Process Clause, "[n]o person shall be deprived of life, liberty, or *property,* without due process of law." *Id.* (Emphasis added.) We have explained that a " 'property interest' includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or understandings." Syllabus Point 3, *Waite v. Civil Service Commission,* 161 W.Va. 154, 241 S.E.2d 164 (1977). A workers' compensation claimant can therefore claim to have a constitutionally protected property interest in vested workers' compensation benefits.

The positions taken by the employers and claimants in these cases, and by the Division in its written interpretations of S.B.2013, can be simply summarized. Each position varies in the interpretation of the word "award" used by the Legislature, or more specifically, varies in the extent to which S.B.2013 may be constitutionally stretched to apply retroactively under substantive due process principles.

Employers take the position that the S.B. 2013 amendments apply to any actions taken in the realm of workers' compensation after July 1, 2003. So, in the case of claimant Tammy Pancake, even though her claim was filed in August 2001 and a favorable ruling rendered by the Office of Judges in December 2002, appellant Wampler Foods insists that reversible error occurred because the Appeal Board did not apply two S.B.2013 amendments in its July 15, 2003 decision.

Claimants take the opposite position, and argue that a claim should be processed using the law in effect on the date of the claimant's injury, and that any other interpretation of S.B.2013 violates constitutional substantive due process protections. This Court has often held, in similar challenges to the retroactive application of legislative amendments to workers' compensation statutes, that the law in effect on the date of the claimant's injury controls the processing of the claim. For example, we noted in *Smith v. State Workmen's Compensation Com'r,* 159 W.Va. 108, 112, 219 S.E.2d 361, 363–364 (1975) that "[t]he statutes governing the rights and duties of the employer and claimant and the powers and responsibilities of the Commissioner are those that were in effect on the date of the injury." *See also Gallardo v. Workers' Compensation Com'r,* 179 W.Va. 756, 759 n. 5, 373 S.E.2d 177, 180 n. 5 (1988) ("We have traditionally held that it is the compensation act existing at the time of the injury that gives rise to the claimant's substantive rights."). Most recently, we stated that:

When an employee, who has been injured in the course of and as a result of his/her employment, applies for workers' compensation benefits ... the employee's application for such compensation is gov-

erned by the statutory, regulatory, and common law as it existed on the date of the employee's injury or last exposure when there is no definite expression of legislative intent defining the law by which the employee's application should be governed. Syllabus Point 8, in part, *State ex rel. ACF Industries, Inc. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176 (1999).

The claimants in the instant cases concede that the Legislature followed the statutory construction rules set forth in *ACF Industries*, and gave a "definite expression of legislative intent" that the claimant's cases should be governed by S.B.2013. Still, the claimants argue that the retroactive application of the law to their already-existing claims undermines the reliance that claimants (and, by the same reasoning, employers) have placed in planning their finances—they argue that if the Legislature can alter the course of pre-existing claims, then claimants (and employers) will never be able to plan for the future because ensuing legislatures could dramatically alter their rights and protections under the law.

Situated between these positions is the Workers' Compensation Division. The Division contends that the workers' compensation fund is in dire financial straits, and estimates that S.B.2013 will result in substantial savings to the fund. The Division argues that if this Court adopts the position of the claimants, then such a holding will have a disastrous financial impact on the fund, with costs to the fund ranging from hundreds of millions to somewhere over one billion dollars.

The Division has, through several letters, given S.B.2013 a unique interpretation.[11] The Division asserts that an "award" is any action taken on an issue. The Division therefore has interpreted S.B.2013 to mean that the law in effect on the date of such an "award" controls the adjudication of that par-

ticular issue within a claim, not the law in effect on the date of injury. To carry out this interpretation, the Division classified all claims on July 1, 2003, using three categories: (1) "future" cases that had not been filed by July 1, 2003; (2) "present" cases or "application pipeline" cases, where the claimant had filed an application for benefits and/or sought relief on an issue, but no ruling—that is, no "award"—had been issued by the Division by July 1, 2003; and (3) "litigation pipeline" cases, where the Division had issued a ruling on a particular question prior to July 1, 2003. The Division asserts that only cases in the third, "litigation pipeline" category can be processed under the pre-July 2003 law, because in these cases the Division had issued an "award" on the issue being litigated. The Division asserts that cases encompassed by the first two categories would be processed under S.B.2013.

From our examination of the workers' compensation act in general, and S.B.2013 in particular, it appears that the Legislature has never defined the term "award," and given it a specific meaning in the context of workers' compensation. In the absence of Legislative action, the Division has chosen to define "award" to include *any* decision on any issue by the Division—whether that decision is favorable to the claimant or not. Hence, if the Division issued an order denying a claimant relief on an issue, the Division contends that the order is an "award" under S.B.2013. If the order was issued prior to July 1, 2003, the Division takes the position that the order would be in the "litigation pipeline" and any future litigation regarding that issue would be governed by statutes in effect prior to July 1, 2003.

We explained in Syllabus Point 4 of *State ex rel. ACF Industries, Inc. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176 (1999) that we will give great deference to the Division's

---

11. At oral argument, counsel for the Division admitted that 19 separate "internal policies" were written and distributed to instruct various claims handlers in the Division on the manner claims should be processed. Counsel also admitted that none of the policies were made part of the record in the instant case. The Court is also aware of the existence of interpretations of S.B. 2013 contained in letters written by the Division

to the Speaker of the House of Delegates and the President of the Senate, and in policy letters written by members of the Office of Judges. Again, these pronouncements are contained nowhere in the record of any of the three cases before the Court. We are troubled by the complete absence of any *official* pronouncement interpreting S.B.2013 in the form of legislative rules.

interpretation of a workers' compensation law:

> Interpretations as to the meaning and application of workers' compensation statutes rendered by the Workers' Compensation Commissioner, as the governmental official charged with the administration and enforcement of the workers' compensation statutory law of this State, pursuant to W.Va.Code § 23–1–1 (1997) (Repl.Vol. 1998), should be accorded deference if such interpretations are consistent with the legislation's plain meaning and ordinary construction.

The Division's interpretation accords with the definition contained in *Black's Law Dictionary* [5th Ed.1979], which gives the following definition of the noun "award":

> The decision or determination rendered by arbitrators or commissioners, or other private or extrajudicial deciders, upon a controversy submitted to them; also the writing or document embodying such decision.

The Division's interpretation also has great bureaucratic appeal, as it is a "bright-line," easy-to-apply interpretation. Lastly, we also note that none of the parties have challenged the Division's interpretation of the word "award," or offered an alternate interpretation.[12] We therefore support the Division's definition of the term "award" to mean any decision upon an issue submitted for resolution.

We now turn our attention to whether the Division's interpretation—that decisions made by the Division prior to July 1, 2003,

are resolved under the "old" law, and that decisions made by the Division on or after July 1, 2003, are resolved under S.B.2013—is legitimate and comports with the concepts of due process contained in our *Constitution*.

■■■ The statutory scheme providing compensation for those who suffer occupational injuries or diseases is an exercise by the Legislature of the State's police power. *State ex rel. Boan v. Richardson*, 198 W.Va. 545, 550, 482 S.E.2d 162, 167 (1996); *Blevins v. State Compensation Commissioner*, 127 W.Va. 481, 496–97, 33 S.E.2d 408, 414 (1945). "The police power is the power of the state, inherent in every sovereignty, to enact laws, within constitutional limits, to promote the welfare of its citizens." Syllabus Point 5, in part, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965).[13] Our law is therefore clear that the Legislature may determine the extent and applicability of claims under the workers' compensation statutory scheme and may change the pre-existing state of the law in the furtherance of its legislative powers—unless some other legal or constitutional bar otherwise limits the exercise of its discretion. *See City of Princeton v. Buckner*, 180 W.Va. 457, 464, 377 S.E.2d 139, 146 (1988) (the Legislature is vested with the right and authority "to enact laws, within constitutional limits, to promote the general welfare of its citizenry.").

■■■ In examining past changes to the Workers' Compensation Act by the Legislature, we have determined that the Due Pro-

---

**12.** This Court has applied the definition of "award" contained in *Black's Law Dictionary*—that any decision upon a controversy is an award—to resolve a case, but then noted as an aside that only an "action of the State Compensation Commissioner and of the Workmen's Compensation Appeal Board, *in allowance of a claim*, [is] an 'award'." *State ex rel. Magun v. Sharp*, 143 W.Va. 594, 598, 103 S.E.2d 792, 795 (1958) (emphasis added). While it could be inferred that "award" means only rulings favorable to a claimant, for the purposes of this case we accept the Division's interpretation.

**13.** Syllabus Point 5 of *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965) states, in full:

> The police power is the power of the state, inherent in every sovereignty, to enact laws,

within constitutional limits, to promote the welfare of its citizens. The police power is difficult to define precisely, because it is extensive, elastic and constantly evolving to meet new and increasing demands for its exercise for the benefit of society and to promote the general welfare. It embraces the power of the state to preserve and promote the general welfare and it is concerned with whatever affects the peace, security, safety, morals, health and general welfare of the community. It cannot be circumscribed within narrow limits nor can it be confined to precedents resting alone on conditions of the past. As society becomes increasingly complex and as advancements are made, the police power must of necessity evolve, develop and expand, in the public interest, to meet such conditions.

cess Clause of the *Constitution*, Art. III, § 10, prohibits the retroactive application of those changes where to do so would impair a "vested" or "substantive" property right. As we stated in Syllabus Point 6 of *State ex rel. Blankenship v. Richardson*, 196 W.Va. 726, 474 S.E.2d 906 (1996):

> Though a workers' compensation statute, or amendment thereto, may be construed to operate retroactively where mere procedure is involved, such a statute or amendment may not be so construed where, to do so, would impair a substantive right.

In the context of workers' compensation law, a vested right "must be something more than a mere expectation based upon an anticipated continuance of an existing law." *State Bd. of Registration for Healing Arts v. Boston*, 72 S.W.3d 260, 265 (Mo.App.2002). A property right to workers' compensation benefits " 'vests' when every event has occurred which needs to occur to make the implementation of the right a certainty." *Aranda v. Industrial Comm'n of Arizona*, 198 Ariz. 467, 471, 11 P.3d 1006, 1010 (2000). The right must be one which the individual has a legitimate claim of entitlement under existing rules or understandings. Syllabus Point 3, *Waite v. Civil Service Commission, supra.*

 "As with any piece of economic legislation that seeks in a comprehensive fashion to address a serious financial obligation, there will always be challenges predicated on fairness." *Verizon West Virginia, Inc. v. West Virginia Bureau of Employment Programs, Workers' Compensation Div.*, 214 W.Va. 95, 586 S.E.2d 170, 179 (2003). Due process of law under our *Constitution* "is ultimately measured by the concept of fundamental fairness." *Blankenship*, 196 W.Va. at 739, 474 S.E.2d at 919; *accord, State v. Osakalumi*, 194 W.Va. 758, 764–66, 461 S.E.2d 504, 510–12 (1995); *Committee on Legal Ethics v. Printz*, 187 W.Va. 182, 188, 416 S.E.2d 720, 726 (1992) ("fundamental fairness . . . is the heart of due process"); *State ex rel. Peck v. Goshorn*, 162 W.Va. 420, 422, 249 S.E.2d 765, 766 (1978) ("due process of law is synonymous with fundamental fairness").

 However, fundamental fairness notwithstanding, challenges to economic legislation that allege a violation of due process are given a deferential standard of review. The general rule is that "[i]n matters of economic legislation, the legislature must be accorded considerable deference under a due process standard." Syllabus Point 3, *Gibson v. West Virginia Dept. of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991).

Understandably, the high level of deference that is accorded to legislative actions aimed at addressing economic problems results from a recognition that lawmakers are uniquely charged with responsibility for passing laws designed to cure such serious social concerns. Consequently, courts are unwilling, as a rule, to second guess the wisdom of cost-spreading mechanisms adopted in connection with a particular legislative act, provided that such legislation can be viewed as a rational means of addressing the economic problem at issue.

*Verizon West Virginia, Inc. v. West Virginia Bureau of Employment Programs, Workers' Compensation Div.*, 214 W.Va. 95, 121, 586 S.E.2d 170, 196 (2003). To overcome this deferential review, "the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Verizon*, 214 W.Va. at 121, 586 S.E.2d at 196 (*quoting Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)).

 The overarching principle that guides this Court in examining the constitutionality of any legislative enactment states that courts must exercise restraint and only negate a statute when it is clear, beyond a reasonable doubt, that the Legislature exceeded constitutional bounds and enacted a statute that cannot be construed to operate in a constitutional manner. As we stated, in Syllabus Point 1 of *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965):

> In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable

construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

Moreover, "[c]ourts will not act to prematurely reach ultimate constitutional issues. Only when an issue is clear should courts decide the constitutional validity of a statute." *Blankenship v. Richardson*, 196 W.Va. 726, 739, 474 S.E.2d 906, 919 (1996). "When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syllabus Point 3, *Willis v. O'Brien*, 151 W.Va. 628, 153 S.E.2d 178 (1967).

With these general principles in mind, we now examine the circumstances of the parties in the three cases before the Court.

### A. *Wampler Foods v. Workers' Compensation Division*

■ In this appeal, the order from the Division denying the claimant relief and holding that Ms. Pancake's claim was not compensable was issued on October 8, 2001 (but, as previously discussed, was reversed and the claim ruled compensable by the Office of Judges on December 4, 2002). Applying the Division's interpretation of S.B.2013, an "award" was issued on October 8, 2001, and the order should be litigated under the law in effect on that date.

When the Appeal Board issued its July 15, 2003 decision affirming the Office of Judges' order holding the appellee's claim compensable, appellant Wampler Foods argues that

the Appeal Board was legally bound to apply *W.Va.Code*, 23–4–1g [2003] and in no way evaluate the appellee's case with any reference to the "rule of liberality." Further, the appellant argues that the Appeal Board was legally bound to apply *W.Va.Code*, 23–5–12 [2003] and issue a detailed, written opinion stating with specificity the law and facts relied upon to reach its decision.

After careful consideration of the record, we reject the appellant's arguments. The Division's interpretation of S.B.2013 accords with notions of substantive due process, and the Appeal Board's determination to not apply *W.Va.Code*, 23–4–1g [2003] to the appellee's case preserved the fundamental fairness of the proceedings used to determine the appellee's right to workers' compensation benefits. The appellee presented evidence of her work-related injury, to both the Division and the Office of Judges, prior to July 1, 2003, with the understanding that the evidence would be examined in light of the liberality rule.[14] To adopt the appellant's position and then hold the appellee to a theoretically different evidentiary standard at the appellate level would, without a doubt, violate the substantive (and likely procedural) due process rights of the appellee.

Furthermore, we see no benefit to be obtained by remanding the case for the Appeal Board (now the Board of Review) to draft a lengthy, detailed opinion. Instead, we believe a remand would be contrary to the rights of the parties to a prompt adjudication of this case. The record presented to the Appeal Board and this Court fully supports the compensability conclusion reached by the Office of Judges, and application of *W.Va. Code*, 23–5–12 [2003] to the instant case would serve no purpose other than to further delay a final resolution and to waste administrative, judicial, and party resources.

Finding no error in the manner used by the Appeal Board to reach its July 15, 2003

---

14. Were this Court to accept the appellant's argument, and rule that the evidentiary burden of both claimants and employers was in some way altered by the Legislature, we would in all fairness be compelled to remand this and every similar case before this Court back to the Division for a full reconsideration. This Court currently has pending in excess of 1,000 appeals with this very issue being implicated, and a remand would result in nothing less than a bureaucratic nightmare for the Division.

decision, we agree with the Division and conclude that the decision should be affirmed.

### B. *State ex rel. Charles Thompson v. Gregory A. Burton*

 In this petition for a writ of prohibition, the claimant asserts that the Commissioner—through the interpretation and application of S.B.2013 by the Division—exceeded his lawful authority by applying *W.Va.Code,* 23–4–6(e)(1) [2003] to his claim. The claimant argues that he is entitled to a writ of prohibition precluding the Commissioner from applying the 2003 version of the statute to his claim, and an order compelling the Commissioner to calculate his benefits using the 1999 variant of *W.Va.Code,* 23–4–6(e)(1). We disagree.

*W.Va.Code,* 23–4–6(e)(1) applies to "all awards made on or after the effective date of the amendment and reenactment of this section during the year two thousand three[.]" The Division has interpreted this language to mean that the statute applies to any decision made by the Division on or after July 1, 2003, regarding the calculation of permanent, partial disability benefits. We give great deference to the Division's interpretation of the statute, *see* Syllabus Point 8, in part, *State ex rel. ACF Industries, Inc. v. Vieweg, supra,* and cannot say beyond a reasonable doubt that such an interpretation offends constitutional due process protections. *See* Syllabus Point 1, *State ex rel. Appalachian Power Co. v. Gainer, supra.* The petitioner has further not established that the Legislature or Division acted in an arbitrary or irrational way. *Verizon,* 214 W.Va. at 121, 586 S.E.2d at 196. Although it can easily be argued that reducing the benefits paid to injured workers is not the best possible solution to the fund's financial woes, we believe the Legislature may do so when circumstances dictate:

> Though we may believe the legislature's actions are harsh or even cruel, or sound economic policy, its policy decisions, under our constitutional framework, are its own, subjecting it to the scrutiny of the electorate in whose hands the constitution vests the ultimate reviewing authority.

*Blankenship v. Richardson,* 196 W.Va. 726, 737, 474 S.E.2d 906, 917 (1996). *See also*

*State ex rel. Beirne v. Smith,* 214 W.Va. 771, 591 S.E.2d 329 (2003).

We cannot beyond a reasonable doubt find constitutional error in the Division's interpretation of *W.Va.Code,* 23–4–6(e)(1) [2003] in the instant case. We therefore agree with the Division and decline to issue a writ of prohibition.

### C. *State ex rel. Yoakum, et al. v. Burton*

The eight claimants in this case seek a writ of mandamus, but otherwise assert arguments similar to those raised in the *Thompson* case. Seven of these claimants assert that the Commission and the Division cannot, under the Due Process Clause, retroactively apply *W.Va.Code,* 23–4–6(e)(1) [2003] to the calculation of their benefits. As we concluded in *Thompson,* we cannot say beyond a reasonable doubt that the Division's interpretation of *W.Va.Code,* 23–4–6(e)(1) [2003], and application of that method of calculating permanent partial disability benefits, violated the Due Process Clause of our *Constitution.*

 As for the eighth claimant, Mr. Martin, we also cannot conclude that the Division's interpretation of *W.Va.Code,* 23–4–6a [2003], and its decision to deny Mr. Martin any permanent partial disability benefits, despite the x-ray evidence suggesting that he has a permanent lung injury, violated the Due Process Clause of our *Constitution* beyond a reasonable doubt. Again, while both this Court and the people of this State may question the wisdom of the Legislature and the Division in taking such a harsh path, as a constitutional question the claimant in this case has not established that the Legislature and the Division acted in an arbitrary and irrational way.

 The eight claimants in the *Yoakum* case do, however, raise a more troubling constitutional question. The *Yoakum* claimants assert that the Due Process Clause, the Equal Protection Clause, and Article III, § 17 of our *Constitution* ("justice shall be administered without ... delay") give claimants a right to receive a resolution of their claims in a reasonably expeditious manner. The claimants assert that the Division's own regulations required the Division to render a decision in their cases within fifteen days

after receiving the evaluation of an independent medical examiner. *See C.S.R.* § 85–6–4.5.[15] Because the Division did not issue an "award" (decision) within these time limits, and delayed issuing an award until after July 1, 2003, the claimants assert that their constitutional rights have been violated.

The record before the Court does not identify whether the physicians who examined the claimants were independent medical examiners appointed by the Division, and— aside from the representations made by claimant's counsel—does not reveal the dates those reports were received by the Division. We therefore cannot say beyond a reasonable doubt that the Division violated any rights of the claimants by failing to act prior to July 1, 2003.

In sum, we cannot find that these claimants have a clear legal right to the relief they seek. Accordingly, we agree with the Division and the requested writ of mandamus must be denied.

### IV.

The Court agrees with the positions taken by the Workers' Compensation Division— now reconstituted as the Workers' Compensation Commission—with respect to all of the issues in these cases. We trust that now the Commission can administer the workers' compensation laws, as modified by the 2003 Legislative changes, in a fiscally responsible and sound manner.

The July 15, 2003 decision of the Appeal Board in case No. 31599, *Wampler Foods v. Workers' Compensation Division*, is affirmed. The writs of prohibition sought in the *Thompson* case, case No. 31600, and of mandamus sought in the *Yoakum* case, case No. 31653, are denied.

The Clerk of the Court is hereby directed to issue the mandate in these cases forthwith.

Affirmed; Writs Denied.

Chief Justice MAYNARD concurs, in part, and dissents, in part and reserves the right to file a separate opinion.

Justice DAVIS concurs and reserves the right to file a concurring opinion.

Justice McGRAW concurs, in part, and dissents, in part and reserves the right to file a separate opinion.

DAVIS, Justice, concurring, joined by Chief Justice MAYNARD:

(Filed Aug. 24, 2004)

In this proceeding, the majority opinion has upheld the application of various amendments to the workers' compensation statutes as they applied to the parties before the Court in these consolidated actions. Let me be clear, I concur in the result reached by the majority opinion in each of these cases. However, I reach my conclusions as to all but one of the issues presented based upon different reasoning than that used in the majority opinion. For this reason, I concur and write separately to explain my viewpoint. As to the one issue for which I agree with the majority opinion's rationale, I write separately to elaborate on that rationale. In this concurrence, I address certain important points that have been brought to light, though perhaps not thoroughly discussed, in the majority opinion. I will first discuss the meaning of the term "award," which is found in several of the amended statutes stating that they shall be applied to "all *awards* made on and after the effective date of the amendment and reenactment of this section . . . ."[1] I will then address the Commission's regulation requiring that certain evaluation

---

**15.** The Code of State Regulations, *C.S.R.* § 85–6–4.5(a), states:
Permanent disability evaluation reports received from physicians to whom claimants have been referred by the Commissioner in claims based upon injuries and occupational diseases other than occupational pneumoconiosis shall be acted upon within fifteen (15) working days from the date of receipt in the Fund.

**1.** *See, e.g.,* W.Va.Code § 23–3–1(d) (2003) (Spec. Supp.2003) ("For all *awards* made on or after the effective date of the amendments to this section . . . .") (emphasis added); W.Va.Code § 23–4–1g(a) (2003) (Spec.Supp.2003) (same); W.Va.Code § 23–4–6(b) (2003) (Spec.Supp.2003) (same); W.Va.Code § 23–4–6(e)(1) (same); W.Va.Code § 23–4–6(n)(2) (same).

reports from physicians examining PPD claimants be "acted upon within fifteen working days from the date of the receipt,"[2] and I will conclude by elaborating on the majority opinion's discussion of the requirement for detailed findings under W. Va.Code § 23–5–12(c)(1) (2003) (Spec.Supp.2003).

### A. Meaning of "Award"

At the outset, it should be noted that none of the parties have raised the issue of the meaning of the term "award."[3] As I will explain in more detail below, I believe this is because it is not necessary to define that term to resolve any of the issues presented to the Court in these consolidated cases. Nevertheless, and in spite of the complete absence of any arguments on this issue by the parties, and in the further absence of anything within the record of any of the cases before the Court to provide guidance on this topic,[4] the majority opinion has, in any event, adopted a definition of this term to be used in connection with the instant cases.[5] In this regard, the majority opinion declares that

> [T]he Division has chosen to define "award" to include *any* decision on any issue by the Division—whether that decision is favorable to the claimant or not. Hence, if the Division issued an order denying a claimant relief on an issue, the Division contends that the order is an "award" under [the 2003 amendments]."

Maj. op. at 819. To justify the position of the Division, the majority opinion notes that this definition comports with one sense of the term "award" as defined in the 5th edition of *Black's Law Dictionary.*[6] The majority goes on, however, to acknowledge that this Court has recognized an alternate definition of the

term that "only an 'action of the State Compensation Commissioner and of the Workmen's Compensation Appeal Board, *in allowance of a claim,* [is] an "award." ' " Maj. op. at 820 n. 12. Ultimately, though, the majority adopted the meaning of the term award that it, correctly or not, attributes to the Commission, that an award is "any decision on any issue by the Division—whether that decision is favorable to the claimant or not." Should the Commission and/or the Legislature disagree with this Court's interpretation of the term "award" as accepted in the majority opinion, then I urge them to act quickly to define this most important term.[7]

Turning to the cases at hand, I will now show why it was not necessary to resolve the meaning of the term "award" to achieve their resolution. To understand this analysis, it must be clear that, unquestionably, the meaning of an "award" would constitute a decision that grants benefits to a claimant. Thus, the uncertainty of whether or not a decision is an "award" arises only where the decision in question is one that is unfavorable to the claimant; that is, one that does not grant benefits. None of the cases before the Court in these consolidated actions involved such a circumstance.

**1. Wampler Foods.** The case presented by Wampler Foods centered upon conduct by the Appeal Board. In that case, the Division issued an order on October 8, 2001, finding the claimant's injury was not compensable. On December 4, 2002, the Office of Judges reversed the Division's order and ruled that the claimant's injury was compensable. The Appeal Board subsequently issued an order on July 15, 2003, affirming the Office of Judges' decision. Because the Appeal

---

**2.** *See* W. Va.C.S.R. § 85–6–4.5(a) (1985).

**3.** It appears that during oral argument, some members of this Court asked counsel for the Division about the Division's definition of an "award." In answering, counsel clearly indicated that he did not know what the official position of the Division was on this issue.

**4.** *See* Maj. op. at 816 n. 10.

**5.** *See* Maj. op. at 820 n. 12 (*"for the purposes of this case* we accept the Division's interpretation.") (emphasis added).

**6.** Notably, the 7th Edition of *Black's Law Dictionary* has abandoned such a definition and defines the term "award" in the noun sense as "[a] final judgment or decision, esp. one by an arbitrator or by a jury assessing damages," and in the verb sense as "[t]o grant by formal process or by judicial decree <the company awarded the contract to the low bidder> <the jury awarded punitive damages>." *Black's Law Dictionary* 132 (7th ed.1999).

**7.** In my view, an "award" means only a decision that grants benefits to a claimant.

Board's order was issued after the July 1, 2003, effective date of the amendments to the workers' compensation statutes, Wampler Foods argued that the Appeal Board's review had to comply with two specific amendments to the statutes.[8] One of the amended statutes, W. Va.Code § 23–4–1g,[9] pertains to the weighing of evidence, or the rule of liberality, and was made to apply to "all awards made on or after the effective date of the amendment and reenactment of this section[.]"[10] I agree with the majority's ultimate disposition of the application of the rule of liberality. I write separately merely because I would have decided the issue on different grounds.

Wampler Foods contends that the Appeal Board committed reversible error because the Legislature abolished the rule of liberality in 2003 pursuant to W. Va.Code § 23–4–1g (2003) (Spec.Supp.2003)[11] and W. Va.Code § 23–1–1(b) (2003) (Spec.Supp.2003).[12] The majority opinion concluded that it was proper for the Appeal Board to apply the rule of liberality because

> [t]he appellee presented evidence of her work-related injury, to both the Division and the Office of Judges, prior to July 1, 2003 with the understanding that the evidence would be examined in light of the liberality rule. To adopt the appellant's position and then hold the appellee to a theoretically different evidentiary standard at the appellate level would, without a

doubt, violate the substantive (and likely procedural) due process rights of the appellee.

Maj. op. at 821–822. Contrary to the reasoning of the majority, I believe this is a red-herring assignment of error that has no merit.

The order issued by the Appeal Board, stated the following:

> [We have] evaluated the decision of the Office of Judges in light of its manner of applying, or misapplying, the liberality rule and in light of the standard of review contained in West Virginia Code § 23–5–12, as well as the applicable statutory language as interpreted by the West Virginia Supreme Court of Appeals.

Clearly the Appeal Board did not say that *it* was applying the rule of liberality-as contended by Wampler Foods. Instead, the order stated that it merely reviewed the decision of the Office of Judges to determine the manner in which the *Office of Judges* had applied or misapplied the rule of liberality. The Appeal Board was obligated to determine whether the Office of Judges had correctly applied the law that was in place when the Office of Judges rendered its decision. The Appeal Board found that the Office of Judges had not misapplied the rule of liberal-

---

**8.** Wampler Foods also raised a third evidentiary issue that does not involve the 2003 amendments.

**9.** The other statutory provision, W. Va.Code § 23–5–12(c)(1), deals with the requirement that decisions, *inter alia*, rendered by the Appeal Board contain certain detail. This provision contains no statement that it applies to "awards made on or after the effective date of the amendment[s]." Therefore, it will not be addressed at this point in my discussion. However, Wampler's substantive argument under this provision is discussed in Section C. *infra*.

**10.** Wampler's substantive argument under this provision, that the Appeal Board improperly applied the rule of liberality, is discussed in Section C. 1. *infra*.

**11.** W.Va.Code § 23–4–1g(b) (2003) (Spec.Supp. 2003) states in relevant part:

> [A] claim for compensation filed pursuant to this chapter must be decided on its merit

and not according to any principle that requires statutes governing workers' compensation to be liberally construed because they are remedial in nature. No such principle may be used in the application of law to the facts of a case arising out of this chapter or in determining the constitutionality of this chapter.

**12.** W.Va.Code § 23–1–1(b) (2003) (Spec.Supp. 2003) states in relevant part:

> It is the specific intent of the Legislature that workers' compensation cases shall be decided on their merits and that a rule of "liberal construction" based on any "remedial" basis of workers' compensation legislation shall not affect the weighing of evidence in resolving such cases.... Accordingly, the Legislature hereby declares that any remedial component of the workers' compensation laws is not to cause the workers' compensation laws to receive liberal construction that alters in any way the proper weighing of evidence as required by section one-g, article four of this chapter.

ity.[13] Consequently, Wampler's contention that, instead, the Appeal Board had improperly applied the liberality rule is an incorrect interpretation of the proceedings underlying its appeal and, thus, is without merit. Thus, the definition of the term "award" was irrelevant to the resolution of this issue.[14]

**2. Claimant Charles Thompson.** Charles Thompson (hereinafter "Mr. Thompson") was awarded 6% PPD by the Division on July 24, 2003; however, the benefits were incorrectly calculated under the law in place prior to the 2003 amendments. Subsequent to issuing the award, Mr. Thompson was informed by the Division that his benefits would be reduced according to the new standard enacted by the Legislature, effective July 1, 2003, in W. Va.Code § 23-4-6(e)(1) (2003) (Spec.Supp.2003).[15] Mr. Thompson filed a petition with this Court seeking a writ of prohibition that would require the Division to pay him PPD benefits under the law in place when he was injured.[16] There is no question that the July 24, 2003, order is the determinative order with respect to Mr. Thompson's claim.

The issue raised by Mr. Thompson was resolved in Syllabus point 8 of *State ex rel.*

*ACF Industries, Inc. v. Vieweg,* 204 W.Va. 525, 514 S.E.2d 176 (1999):

> When an employee, who has been injured in the course of and as a result of his/her employment, applies for workers' compensation benefits in the form of a permanent total disability (PTD)[, or a permanent partial disability (PPD),] award, the employee's application for such compensation is governed by the statutory, regulatory, and common law as it existed on the date of the employee's injury or last exposure when there is no definite expression of legislative intent defining the law by which the employee's application should be governed.

Under *ACF,* this Court is obligated to defer to legislative enactments changing workers' compensation benefits laws when the Legislature has made its intent clear. It is quite clear from a review of W. Va.Code § 23-4-6(e)(1),[17] that the Legislature intended for this provision to apply to Mr. Thompson's 6% PPD award. The award, which is undisputedly the determinative order with respect to judging which law to apply, was not made until *after* July 1, 2003.[18]

---

**13.** For obvious reasons, Wampler Foods did not argue that the Office of Judges could not have applied the rule of liberality. That is, at the time the Office of Judges rendered its decision on December 4, 2002, the statutes purporting to abolish the rule of liberality had not yet been enacted into law.

**14.** My conclusion as to the irrelevancy of the meaning of an "award" would also tend to explain why neither party briefed the issue.

**15.** W.Va.Code § 23-4-6(b) (2003) (Spec.Supp. 2003) contains the language declaring that its provisions apply "[f]or all awards made on and after the effective date of the amendment and reenactment of this section during the year two thousand three . . . ."

**16.** In his brief, Mr. Thompson alleged the following grounds as to why he should receive PPD benefits under the law in place prior to the amendments of 2003:(1) he had a vested property interest in PPD benefits, and (2) prior decisions of this Court have held that vested property interests could not be taken away without due process of law.

**17.** W.Va.Code § 23-4-6(e)(1) states in full:

(e)(1) For all awards made on or after the effective date of the amendment and reenact-

ment of this section during the year two thousand three, if the injury causes permanent disability less than permanent total disability, the percentage of disability to total disability shall be determined and the award computed on the basis of four weeks' compensation for each percent of disability determined at the maximum or minimum benefit rates as follows: Sixty-six and two-thirds percent of the average weekly wage earnings, wherever earned, of the injured employee at the date of injury, not to exceed seventy percent of the average weekly wage in West Virginia: Provided, That in no event shall an award for permanent partial disability be subject to annual adjustments resulting from changes in the average weekly wage in West Virginia: Provided, however, That in the case of a claimant whose award was granted prior to the effective date of the amendment and reenactment of this section during the year two thousand three the maximum benefit rate shall be the rate applied under the prior enactment of this section which was in effect at the time the injury occurred.

**18.** Nowhere in either Mr. Thompson's brief or the Division's brief is the issue of the meaning of the term "award" raised. The reason for this is simple. Under any rational definition of "award" that would conceivably be adopted, the

3. *Yoakum* Claimants. In the final case presented to the Court, eight claimants sought a writ of mandamus to require the Division to apply the PPD benefits statute that was in place at the time of their injuries and/or evaluations.[19] The orders affecting all eight claimants were issued after July 1, 2003. Neither the claimants nor the Division argued in their briefs that resolution of this issue required a determination of what constitutes an "award." This simply was not an issue, as far as the parties were concerned, because all of the claimants received an award entitling them to benefits.[20]

Having established that is was not necessary to expressly address the meaning of the term "award," I move to my second point of concern, the majority opinion's interpretation of W. Va.C.S.R. § 85–6–4.5(a).

### B.W. Va.C.S.R. § 85–6–4.5(a)

The eight claimants in the *Yoakum* case asserted, in part, that the old workers' compensation statutes should apply to their cases because the Division did not render a decision within fifteen days of the submission of medical information pertaining to their claims. According to the claimants, under W. Va.C.S.R. § 85–6–4.5(a) (1985), a regulation promulgated by the Division, the Division *must* rule on PPD claims (other than OP claims) within fifteen days of the submission of medical information on the claims. A careful reading of the majority opinion clear-ly shows that the majority implicitly adopted the claimants' interpretation of the regulation, but found fault with the evidence they produced to show noncompliance with this regulation.[21]

The regulation in question provides as follows:

Permanent disability evaluation reports received from physicians to whom claimants have been referred by the Commissioner in claims based upon injuries and occupational diseases other than occupational pneumoconiosis shall be acted upon within fifteen (15) working days from the date of receipt in the Fund.

W. Va.C.S.R. § 85–6–4.5(a). In its brief, the Division contends that the claimants have misinterpreted the regulation. The Division argued that the regulation does not require it to "render a decision" within fifteen days, but rather, merely requires that medical evidence be "acted upon" within fifteen days. Further, the Division pointed out in its brief that, for all practical purposes, it is impossible to render a decision in all cases within fifteen days.

The gist of the Division's argument, which was completely ignored by the majority opinion, is that when a PPD evaluation report is received, various steps must be taken by the Commission before any PPD benefits can be awarded. For instance, such evaluation reports are routinely sent to the Commission's

---

order granting Mr. Thompson 6% PPD benefits is an "award."

**19.** One of the primary arguments asserted by the eight claimants involved essentially the same contention raised by Mr. Thompson. Consequently, I believe Syllabus point 8 of *State ex rel. ACF Industries, Inc. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176 (1999), disposed of the first argument raised by the eight claimants. Their other argument involves W. Va.C.S.R. § 85–6–4.5(a), which is addressed in Section B, *infra*.

**20.** Morris Yoakum was awarded 25% PPD benefits on August 5, 2003; Leonard Davis was awarded 7% PPD benefits on July 9, 2003; Robert Carpenter was awarded an unspecified percentage of PPD benefits on July 22, 2003; Gale G. Fraley was awarded 24 % PPD benefits on July 2, 2003, an additional 10% PPD benefits on July 30, 2003, and 20% PPD benefits on July 14, 2003; Alan Kiblinger was awarded 5% PPD ben-efits on August 12, 2003; Gilbert Kuehl was awarded 6% PPD benefits on August 7, 2002, which award was later reduced by order of the Division on August 28, 2003; and Robert L. Meadows was awarded 2% PPD benefits on July 28, 2003. Additionally, Gene Martin was awarded 5% OP–PPD on July 21, 2003. It should be noted that Mr. Martin's OP–PPD award was subsequently taken from him because the Legislature abolished all entitlement to the statutory 5% OP–PPD award.

**21.** *See* Maj. op. at 824 ("The record before the court does not identify whether the physicians who examined the claimants were independent medical examiners appointed by the Division, and—aside from the representations made by the claimant's counsel—does not reveal the dates those reports were received by the Division. We therefore cannot say beyond a reasonable doubt that the Division violated any rights of the claimants by failing to act prior to July 1, 2003.").

Office of Medical Services for review to determine if the rating physician complied with the American Medical Association's guidelines on impairment ratings. Also, the Commission must work with the appropriate state agency to determine if any of the PPD award is payable in satisfaction of an order "for child or spousal support entered pursuant to [W. Va.Code § 48–1–1, et seq.]." W. Va.Code § 23–4–18. In addition, the Commission must determine if the claimant received an advance on his or her PPD award in the form of "nonawarded partial benefits" and must make a corresponding offset in the PPD award, if appropriate. *See* W. Va.Code §§ 23–4–7a(c)(2) and 23–4–7a(e) (2003) (Spec.Supp.2003). These are some of the various *actions* that must be taken by the Commission before the PPD award is made, and nothing in the regulation relied upon requires that the actual award be made within the fifteen (15) days.

It is clear to me that *the Division's interpretation of its own rule* is sound. In light of the majority's implicit rejection of the Division's interpretation of the regulation, I believe the Division should go through the necessary legal procedures to amend the regulation to make clear the meaning of the regulation, and I urge it to take this action promptly.

Accordingly, while I concur in the majority's decision to deny the writ of mandamus as to this issue insofar as I believe the Division's interpretation of the regulation is logical, I would have denied the writ based upon the conclusion that the claimants' attempt to rely on W. Va.C.S.R. § 85–6–4.5(a) was without merit. *See Cookman Realty Group, Inc. v. Taylor*, 211 W.Va. 407, 417, 566 S.E.2d 294, 304 (2002) (Per Curiam) (Starcher, J., concurring) ("The agency's construction [of its own regulation], while not controlling upon the courts, nevertheless constitutes a body of experience and informed judgment to which a reviewing court should properly resort for guidance.").

### C. Detailed Findings Under W. Va.Code § 23–5–12(c)(1)

Finally, I agree with both the majority's rationale and its ultimate disposition of an additional issue that was raised by Wampler:

the necessity for detailed findings of fact in an order rendered by the Appeal Board. I write separately only to elaborate on the rationale expressed by the majority.

Wampler argues that the Appeal Board failed to issue an order that set out findings of fact and conclusions of law as required by W. Va.Code § 23–5–12(c)(1) (2003) (Spec.Supp.2003). This provision of the statute provides that "[a]ll decisions, findings of fact and conclusions of law of the board ... shall be in writing and state with specificity the laws and facts relied upon to sustain, reverse or modify the administrative law judge's decision." The majority opinion correctly concluded that

> [t]he record presented to the Appeal Board and this Court fully supports the compensability conclusion reached by the Office of Judges, and application of *W. Va.Code*, 23–5–12 [2003] to the instant case would serve no purpose other than to further delay a final resolution and to waste administrative, judicial, and party resources.

Maj. op. at 822. I write separately to explain the legal foundation for this conclusion.

Prior to the enactment of W. Va.Code § 23–5–12(c)(1) in 2003, neither this Court nor any statute required the Appeal Board to issue findings of fact and conclusions of law when it merely affirmed a decision of the Office of Judges. However, in Syllabus point 5 of *Conley v. Workers' Compensation Division*, 199 W.Va. 196, 483 S.E.2d 542 (1997), we held that "when the Workers' Compensation Appeal Board issues an order that is not an affirmance of a ruling by the Workers' Compensation Office of Judges, it must set out adequate findings that support its decision."

It is clear that W. Va.Code § 23–5–12(c)(1) has modified the law by also requiring the Appeal Board to issue findings of fact and conclusions of law when it affirms a decision. Insofar as W. Va.Code § 23–5–12(c)(1) is a procedural change that assists this Court when it reviews challenges to decisions made by the Appeal Board, I believe the Appeal Board's failure to comply with the statute was harmless error. I take this position for

two reasons. First, the Appeal Board's affirmance of the Office of Judges' order meant that it adopted the findings of fact and conclusions of law made by the Office of Judges. Second, in this Court's review of the Appeal Board's order, we are also obligated to examine the order issued by the Office of Judges. Therefore, to the extent that the order of the Office of Judges adequately set out findings of fact and conclusions of law, we know the basis of the Appeal Board's affirmance. *See Adkins v. K–Mart Corp.*, 204 W.Va. 215, 220, 511 S.E.2d 840, 845 (1998) (Per Curiam) (recognizing that the circuit court's summary judgment order did not set out the required findings of fact and conclusions of law, but refusing to reverse the case because of such failure).

To be clear, I believe the Appeal Board should have issued findings of fact and conclusions of law, as now required by W. Va. Code § 23–5–12(c)(1). However, in this instance I am in full agreement with the majority's conclusion that the error was harmless. *See Jennings v. Smith*, 165 W.Va. 791, 792, 272 S.E.2d 229, 230 (1980) (Per Curiam) ("Upon careful consideration of the record, briefs, and oral argument presented on this appeal we affirm, concluding that any error or defect in the proceedings below was . . . harmless.").

In view of the foregoing, I respectfully concur. I am authorized to state that Chief Justice Maynard joins in this concurring opinion.