IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**WEST VIRGINIA DIVISION OF HIGHWAYS,**
**Employer below, Petitioner**

**vs.)     No. 22-ICA-135     (JCN: 2019015684)**

**LARRY D. SCOTT,**
**Claimant below, Respondent**

**FILED**
**March 6, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner West Virginia Division of Highways ("DOH") appeals the August 29, 2022, order of the West Virginia Workers' Compensation Office of Judges ("OOJ"). Respondent Larry D. Scott ("Mr. Scott") filed a timely response.[1] Petitioner did not file a reply.

The issue on appeal is whether the OOJ erred in reversing the claim administrator's order denying Mr. Scott's claim of compensability for the occupational disease of Undifferentiated Pleomorphic Sarcoma ("UPS"). The OOJ found that Mr. Scott sustained an occupational disease pursuant to the provisions of West Virginia Code § 23-4-1(f). The DOH now appeals the OOJ's order.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' briefs, the record on appeal, the oral arguments of counsel and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the OOJ's August 29, 2022, order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Scott worked as a transportation engineering technician and radiation safety officer for the DOH. According to his July 2, 2019, deposition testimony, Mr. Scott worked for the DOH for ten years. In November of 2017, Mr. Scott sought treatment for a tumor in his right leg below his knee which was found to be malignant. He filed a workers' compensation claim alleging UPS, a rare type of cancer, was caused by his exposure to radioactivity from a moisture sensor that he routinely used during his employment with the DOH. William Grosh, M.D., an oncologist in Charlottesville, Virginia, diagnosed UPS and treated Mr. Scott with chemotherapy and amputation of his leg.

By order dated March 29, 2019, the claim administrator rejected Mr. Scott's claim on the basis that UPS was not received in the course of and resulting from employment. The order stated that no medical evidence had been submitted to support that the disease

---

[1] West Virginia Division of Highways is represented by James W. Helsep, Esq. Mr. Scott is represented by James R. Fox, Esq.

was causally related to work activities. Mr. Scott protested the claim's denial to the OOJ. On August 12, 2019, Mr. Scott died, at age 46, as a result of UPS.

In a decision dated August 29, 2022, the OOJ held Mr. Scott's claim compensable. The OOJ noted that Mr. Scott used a Troxler 3420 Moisture Density Gauge ("gauge"), that emitted radiation, in conjunction with his work. In an Incident Report dated January 24, 2019, Mr. Scott stated that he carried the gauge on his right side at his leg, and he used the device at all district eight construction projects. On his chest, Mr. Scott wore a dosimetry badge that collected radiation emission data.

The OOJ found the October 25, 2019, report by Dr. Grosh to be persuasive. In that report, Dr. Grosh established that he treated Mr. Scott for UPS associated with radiation exposure. He said that only 20% of soft tissue sarcomas occur in the legs below the knee, but this was the area where Mr. Scott received radiation exposure from a gauge used in his work. Dr. Grosh noted that Mr. Scott's dosimetry badge was located on his chest, away from the strongest radiation emissions. He opined that Mr. Scott's UPS developed as a direct and proximate result of Mr. Scott's occupational radiation exposure. According to Dr. Grosh's testimony, there was strong evidence of radiation exposure and "powerful evidence" that Mr. Scott's UPS was radiation induced.

Reports of Mr. Michael Gossman, M.S., DABR, FAAPM, FACR, Chief Medical Physicist and Radiation Safety Officer, and board-certified medical physicist, were also deemed to be persuasive by the OOJ. Mr. Gossman is the lead medical physicist in the Department of Radiation Oncology at Baptist Health Floyd in New Albany, IN. In reports dated September 23, 2020, October 1, 2020, and October 11, 2021, Mr. Gossman determined that Mr. Scott's cumulative radiation exposure at his leg was not well represented by the dosimeter he wore on his chest. According to calculations made by Mr. Gossman, the radiation exposure at Mr. Scott's leg was at least 16.83 mrems/hr., and his cumulative exposure was at least 183,000 to 330,000 millirem ("mrem").[2] Mr. Gossman stated that his calculations were based on the data listed in the manufacturer's manual with consideration given to the distance from the gauge to Mr. Scott's leg. Further, Mr. Gossman noted that the manufacturer's data confirmed the gauge constantly emitted radiation. According to Mr. Gossman, his calculations matched the data provided in the user's manual.

The OOJ reviewed a report dated February 2, 2021, by David Randolph, M.D., a specialist in occupational medicine who also holds a Ph.D. in epidemiology and a Master of Public Health. According to Dr. Randolph, Mr. Scott's cancer did not arise as a consequence of his occupational exposure. Dr. Randolph reviewed the records under the "Bradford-Hill" methodology and concluded that Mr. Scott's UPS was not caused by radiation emitted by the gauge. The testimony of Dr. Randolph was taken on June 25, 2021. Dr. Randolph testified that he had formal training in radiation but was not a radiation expert and had not conducted any tests of the radiation emitted from the gauge. He acknowledged he had no expertise in the area of radiation oncology and had not treated anyone with UPS. Dr. Randolph testified that Dr. Grosh's evaluation failed to address the Bradford-Hill criteria.

---

[2] Millirem is the unit used in measuring radiation dosage.

Further, Dr. Randolph opined there was no evidence of radiation damage. The OOJ did not find Dr. Randolph's report to be persuasive.

The May 18, 2021, report by P. Andrew Karam, Ph.D. was also deemed to be unpersuasive. Dr. Karam is a radiation safety professional certified by the American Board of Health Physics, however he is not a physician. Dr. Karam teaches radiation safety, is a published author on the subject of radiation safety, and has previously qualified as an expert on radiation in federal court. Dr. Karam reviewed the exposure data related to Mr. Scott, the manufacturer's specifications on the nuclear gauge, Mr. Scott's medical records, and the various reports from Dr. Grosh, Dr. Randolph, and Mr. Gossman. Dr. Karam opined as to the likely radiation exposure sustained by Mr. Scott. He concluded that it was unlikely that Mr. Scott developed UPS as a result of occupational radiation exposure. Dr. Karam utilized an assessment tool particular to claims arising under the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA").[3] Dr. Karam concluded that Mr. Scott's claim fell below the "more likely than not" standard used in EEOICPA claims.

However, the OOJ did find an October 8, 2021, report by Michael Kaufman, M.D., an oncologist pathologist, to be persuasive. Dr. Kaufman determined that Mr. Scott did not have neurofibromatosis or an NF-1 mutation. According to Dr. Kaufman, tumors may rise in individuals with an NF-1 mutation, and they may also arise spontaneously. However, he found that Mr. Scott did not demonstrate indicia of an NF-1 mutation or neurofibromatosis. Further, because Mr. Scott's identical twin brother underwent genetic testing indicating he did not carry the NF-1 mutation or have neurofibromatosis, Dr. Kaufman felt that Mr. Scott's cancer was unrelated to a genetic abnormality. Dr. Kaufman opined that there was ample evidence that chronic exposure to radiation in a given area can give rise to malignancies, particularly sarcomas. He explained that Mr. Scott's rare form of cancer was known to be primarily caused by radiation and he linked it to the gauge used by Mr. Scott at work. Dr. Kaufman agreed with Dr. Grosh's report, but he disagreed with Dr. Randolph's assessment.

In rendering its decision, the OOJ reviewed the six factors for compensability as set forth at West Virginia Code § 23-41(f) and determined that all six factors necessary to establish an occupational disease were met. First, the OOJ concluded that there was a direct causal connection between Mr. Scott's employment and the UPS, as the gauge Mr. Scott was required to wear emitted radiation. Second, the OOJ noted that Mr. Scott's cancer was in the area most exposed to the radiation from the device and the disease followed as a natural incident of his work exposure based upon Mr. Gossman's data calculated directly from the manufacturer's operator's manual. Third, the OOJ found the disease could be fairly traced to Mr. Scott's employment as the proximate cause as determined by Drs. Grosh and Kaufman. Fourth, the OOJ reasoned that the UPS did not come from a hazard to which workmen would have been equally exposed outside of the employment, and Mr. Scott's exposure was sufficient to cause cancer. The fifth factor, that the disease was incidental to the character of the business and not independent of the relationship between an employer

---

[3] EEOICPA is intended to compensate current and former energy workers for illnesses contracted as a result of radiation exposure.

and employee, was found in Mr. Scott's favor since he was assigned the gauge to use for his work at the DOH. The sixth factor, that the disease had its origin in the risk connected with the employment and followed from that source as a natural consequence, was also found in Mr. Scott's favor. The OOJ concluded that the cancerous tumor on Mr. Scott's leg was an unusual type that arose in the area where he carried the gauge. Further, the OOJ observed that Dr. Grosh opined that radiation emitted by the gauge caused the UPS. It is from the OOJ's August 28, 2022, decision that the DOH now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1)     In violation of statutory provisions;
> (2)     In excess of the statutory authority or jurisdiction of the Board of Review;
> (3)     Made upon unlawful procedures;
> (4)     Affected by other error of law;
> (5)     Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, No. 22-ICA-10, ____ W. Va. ____, ____, ____ S.E. 2d ____, _____, 2022 WL 17546598, at *4 (W. Va. Ct. App. 2022).

On appeal, the DOH alleges four points of error. First, the DOH asserts the OOJ's order is in violation of statutory provisions regarding the compensability of occupational diseases and is clearly wrong in view of the reliable, probative, and substantial evidence of the whole record. Second, the DOH argues that the OOJ erroneously concluded that Mr. Scott's UPS was causally connected to his employment activities with the DOH. Third, that the OOJ failed to address dosimetry data collected while Mr. Scott worked for the DOH that established his exposure was far below federally mandated exposure limits. Fourth, that the radiation analysis of Dr. Karam and the epidemiological study of Dr. Randolph agree with the dosimetry data and testing of the nuclear moisture gauges used by Mr. Scott during his employment with the DOH, which should be determinative on this matter. After a review of the record, we find no error. The OOJ was not clearly wrong in reversing the claim administrator's denial for compensability.

West Virginia Code § 23-4-1(f), provides that:

For the purposes of this chapter, occupational disease means a disease incurred in the course of and resulting from employment. No ordinary disease of life to which the general public is exposed outside of the employment is compensable except when it follows as an incident of occupational disease as defined in this chapter. Except in the case of occupational pneumoconiosis, a disease is considered to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction: *Provided*, That compensation is not payable for an occupational disease or death resulting from the disease unless the employee has been exposed to the hazards of the disease in the State of West Virginia over a continuous period that is determined to be sufficient, by rule of the board of managers, for the disease to have occurred in the course of and resulting from the employee's employment. An application for benefits on account of an occupational disease shall set forth the name of the employer or employers and the time worked for each. The commission may allocate to and divide any charges resulting from the claim among the employers by whom the claimant was employed. The allocation shall be based upon the time and degree of exposure with each employer.

"W. Va. Code § 23-4-1 does not require a claimant to prove that the conditions of his employment were the exclusive or sole cause of the disease, nor does it require the claimant to show that the disease is peculiar to one industry, work environment, or occupation." Syl. Pt. 3, *Powell v. State Workmen's Comp. Comm'r*, 166 W. Va. 327, 273 S.E.2d 832, (1980).

When establishing an occupational disease, Mr. Scott had to show, by a preponderance of the evidence, that he contracted the disease in the course of and as a result of his employment with the DOH. After weighing the evidence and testimony in this matter, the OOJ determined that Mr. Scott exceeded that burden. We are not in a position to reweigh said evidence at the appellate stage.

In reviewing decisions by administrative agencies, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." *Duff v. Kanawha Cnty. Comm'n*, No. 22-ICA-10, ____ W. Va. ____, ____, ____ S.E. 2d ____, _____, 2022 WL 17546598, at *11 (W. Va. Ct. App. 2022)(citing Syl Pt. 3, *In Re Queen*, 196 W.Va. 442, 473 S.E. 2d 483 (1996)). "This Court will not reverse a finding of fact made by the Workmen's Compensation Appeal Board unless it appears from the proof upon which the appeal board acted that the finding is plainly wrong*." Plummer v. Workers Comp. Div.*, 209 W. Va. 710, 712, 551 S.E.2d 46, 48 (2001)(citing Syl. Pt., *Rushman v. Lewis,* 173 W.Va. 149, 313 S.E.2d 426 (1984)). Upon a thorough review of the record, the OOJ's decision that Mr. Scott's occupational disease was causally connected to his employment is supported by substantial evidence and is not clearly wrong.

Accordingly, we affirm the OOJ's August 29, 2022, order.

Affirmed.

**ISSUED:** March 6, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge Gregory L. Howard, Jr., sitting by temporary assignment

Judge Thomas E. Scarr, voluntarily recused